**SEALED**



Chris D. Collins
Texas Bar No. 24025300
Spencer D. Solomon
Texas Bar No. 24066117
BARLOW GARSEK & SIMON, LLP
3815 Lisbon Street
Fort Worth, Texas 76107
Telephone: (817) 731-4500
Facsimile: (817) 731-6200
**Attorneys for Relator, John Doe**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. John Doe,<br><br>Plaintiffs,<br><br>vs.<br><br>E-BIOFUELS, LLC; E-BIOFUELS WEST, LLC; CARAVAN TRADING, LLC; CIMA GREEN, LLC; GREEN GREASE SOLUTIONS, LLC; TRU VERDE, LLC; AUGSBURG ENERGY, LLC; ELEMENT ALTERNATIVE ENERGY LLC; WERKS MANAGEMENT, LLC; IMPERIAL PETROLEUM, INC.; VISION BIODIESEL, INC.; ULTRA GREEN ENERGY SERVICES, LLC; ASTRA ENERGY CANADA, INC.; ASTRA OIL COMPANY, LLC; FLYING J INC.; JOSEPH S. FURANDO; CHRISTINE M. FURANDO; EVELYN KATARINA TRACY; CRAIG D. DUCEY; CHAD D. DUCEY; CHRISTOPHER D. DUCEY; BRIAN D. CARMICHAEL; ALEXANDER CHEPURKO; ANDREW POLLOCK; JEFFREY T. WILSON; AARON WILSON; ROBERT "JAY" PIERCE; VERN MANWARRING; TROY MCKEE; and J. GREGORY THAGARD,<br><br>Defendants. | Case No. 4-12CV-472 Y |

ORIGINAL COMPLAINT OF RELATOR JOHN DOE, SUBMITTED IN-CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

Page 1

# ORIGINAL COMPLAINT OF RELATOR JOHN DOE, SUBMITTED IN-CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 4

II. PARTIES ............................................................................................................................. 6

III. RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY ......................................... 11

IV. JURISDICTION AND VENUE ........................................................................................ 12

V. FACTS .............................................................................................................................. 12

   A. Overview of the Energy Policy Act and Federal Regulation of Renewable Fuels ............ 12

   B. Federal Benefits Available to Producers and Distributors of Renewable Fuels ................ 18

   C. Defendants' Fraudulent Scheme ........................................................................................ 21

   D. Specific Instances of Fraudulent Activity ......................................................................... 25

      1. *E-Biofuels's Cover Story and the Highly Confidential Memo* ........................................ 25

      2. *False Statements Regarding E-Biofuels's Plant Capacity* ............................................... 26

      3. *E-Biofuels Did Not Purchase the Amount of Chemicals Required for Legitimate Production of Biodiesel* ................................................................................................. 28

      4. *The Houston Transaction* ................................................................................................ 29

      5. *E-Biofuel's "Sweetheart Deal" With Element* ................................................................ 30

      6. *Joseph Furando Exercised Controlling Influence over Imperial and E-Biofuels's Principal "Feedstock" Supplier, Caravan Trading* ......................................................... 31

   E. E-Biofuels's Pending Chapter 7 Bankruptcy Case............................................................ 32

   F. Defendants' Receipt of Federal Benefits and Avoidance of Civil Penalties ..................... 33

      1. *Funds Paid to E-Biofuels Under the USDA's Advanced Biofuel Payment Program* .... 33

      2. *Tax Credits and Excise Tax Refunds Received by E-Biofuels* ...................................... 35

    3. *Civil Penalties Owed by Defendants and Downstream Distributors for Noncompliance and Violations of RFS2* .................................................................................... 36

VI. ACTIONABLE CONDUCT UNDER THE FALSE CLAIMS ACT .................................. 39

VII. CAUSES OF ACTION ........................................................................................ 42

  A. COUNT I - FALSE CLAIMS (31 U.S.C. § 3729(a)); 31 U.S.C. § 3729(a)(1)(A)) .......... 42

  B. COUNT II - FALSE RECORDS OR STATEMENTS (31 U.S.C. § 3729(a)); 31 U.S.C. § 3729(a)(1)(B)) ............................................................................................................ 43

  C. COUNT III – CONSPIRACY (31 U.S.C. § 3729(a); 31 U.S.C. 3729(a)(1)(C)) ............... 44

  D. COUNT IV – REVERSE FALSE CLAIM (31 U.S.C. § 3729(a)); 31 U.S.C. 3729(a)(1)(G)) ............................................................................................................ 44

VIII. REQUEST FOR RELIEF ..................................................................................... 45

The United States of America, by and through *qui tam* relator John Doe ("Relator"), brings this action under 31 U.S.C. §§ 3729–3733 (the "False Claims Act") to recover all damages, penalties and other remedies established by the False Claims Act on behalf of the United States and on behalf of Relator and would show the following:

## I.
## INTRODUCTION

1.  The Energy Policy Act of 2005 and the Energy Independence and Security Act of 2007 ("EISA") established the Renewable Fuel Standard (the "RFS") as a part of the Clean Air Act. Pursuant to its authority under the Clean Air Act, the United States Environmental Protection Agency (the "EPA") promulgated and enforces the RFS regulations, which mandate that a specified proportion of motor vehicle fuels sold within the United States must qualify as renewable fuels.

2.  Biomass-based diesel, commonly known as biodiesel, is one of the categories of qualifying renewable fuels that has been established under the RFS. Under the RFS, producers and importers of gasoline and diesel fuels in the United States are known as "obligated parties." Obligated parties are required on an annual basis to meet a "Renewable Volume Obligation" or "RVO". Each obligated party's RVO represents the quantity requirements of renewable fuel that it must introduce into the stream of commerce during an annual compliance period.

3.  Obligated parties meet their annual RVO by accumulating and reporting credits known as Renewable Identification Numbers ("RINs"). Each RIN represents a credit for a particular category of renewable fuel. RINs are generated and "attached" to each gallon or batch of pure renewable fuel at the time it is produced or imported into the United States from an EPA-certified source. Those RINs are then sold with the renewable fuel or may be "detached" and

sold separately from the fuel by blending it with a petroleum product. "Detached" RINs may be traded and used to satisfy an obligated party's RVO. For example, an EPA-registered producer may generate RINs by producing 100% biodiesel ("B100") from unprocessed feedstock. That producer may then sell the B100 along with the "attached" RINs to a blender or other obligated party. Alternatively, that producer may "detach" the RIN credits associated with the B100 by blending it with at least 1% non-renewable petro-diesel (thereby creating B99), and either: (a) utilize the RIN credits to meet its annual RVO (if the producer is an obligated party), or (b) trade the RIN credits through the EPA's Moderated Transaction System (if the producer has accumulated sufficient RIN credits for that year or is not an obligated party). Because producers, blenders and distributors of renewable fuel are eligible for numerous federal benefits, including tax credits, loan guaranties and other subsidies, and because RIN credits are valuable commodities among obligated parties, the market price of B100 (which may be blended with petro-diesel to demonstrate RVO compliance and/or eligibility for federal benefits) is higher than the market price of pre-blended biofuel, such as B99, especially when such pre-blended fuel is sold separately from the RINs previously affiliated with its blendstock.

4. The EPA has promulgated regulations pertaining to the registration of renewable fuel production facilities, production of qualifying renewable fuels, generation of RINs, separation of RINs, transfer of RINs, reporting requirements, record-keeping requirements and the use of RINs for compliance purposes at 40 CFR § 80.1100 et seq. An obligated party that fails to satisfy its RVO for a particular year, or any party that violates the RFS2 regulations, is subject to substantial civil penalties to the EPA, including up to $32,500.00 fine for each day of noncompliance or continuing violation. These penalties are a primary reason why RIN credits

have become a valuable commodity among obligated parties, as they provide the means for demonstrating compliance with RFS2 and avoiding the severe penalties associated with noncompliance.

5. This suit concerns a scheme by an EPA-registered biofuel producer (E-Biofuels, LLC), its principals, affiliates, suppliers, and downstream distributors, to fraudulently manipulate the federal incentive programs and regulations governing the domestic market for renewable fuels. In short, E-Biofuels engaged in a scheme, which involved purchasing pre-blended B99 that was ineligible for RINs or for which associated RIN credits had already been stripped, misreporting that B99 as "feedstock" and/or "off-spec or recycled methyl esters," and falsely certifying to the EPA that E-Biofuels processed the feedstock at its plant in Middletown, Indiana, to produce tens of millions of gallons of B100, for which new RINs were generated and traded in the domestic market. Contrary to its reports to the Government and to customers, E-Biofuels simply stored the B99, improperly generated RINs for that fuel, and resold it to distributors and obligated parties throughout the United States as B100. By introducing ineligible B99 into the domestic market as pure B100 for which new RINs were improperly generated, traded, and reported to demonstrate compliance with RFS, E-Biofuels and its co-conspirators manipulated the domestic market for renewable fuels and defrauded the federal government out of hundreds of millions of dollars in fines, grants, tax incentives, loan guarantees, and other subsidies.

## II.
## PARTIES

6. The identity of Relator is not disclosed herein and is protected from disclosure in this matter in perpetuity pursuant to the Court's Sealed Order Allowing Qui Tam Relator to proceed by Fictitious Name and Granting leave to Amend Complaint Prior to the Entry of Any

Order Unsealing the Original Complaint or Allowing Further Proceedings. As such, this Amended Complaint has been modified to remove any reference to Relator that may reveal Relator's identity.

7. Defendant, E-Biofuels, LLC ("E-Biofuels"), is a limited liability company domiciled in the State of Indiana, which may be served by and through its registered agent, Craig Ducey, 710 Norfleet Dr. W., Middletown, IN 47356. E-Biofuels may also be served through its attorney-of-record, John Lewis, 11206 Fall Creek Road, Indianapolis, IN 46256.

8. Defendant, E-Biofuels West, LLC, is a limited liability company domiciled in the State of Indiana, which may be served by and through its registered agent, Craig Ducey, 11650 Lantern Rd., Suite 111, Fishers, IN 46038.

9. Defendant, Caravan Trading, LLC ("Caravan Trading"), is a limited liability company domiciled in the State of New Jersey, which may be served by and through its registered agent, Christine M. Furando, at 29 Ladik Place, Montvale, NJ 07645 or 23 Burning Hollow Rd, Saddle River, NJ 07458-2940.

10. Defendant, CIMA Green, LLC ("CIMA Green"), is a Connecticut limited liability company with its principal offices located at 52 Park Ave., Suite A7, Park Ridge, NJ 07656, which may be served by and through its registered agent, Incorp Services, Inc., 1622 Main Street, East Hartford, CT 06108, or through its registered agent in Texas, Incorp Services, Inc., 815 Brazos St., Suite 500, Austin, TX 78701.

11. Defendant, Green Grease Solutions, LLC, is a limited liability company with its principal offices located at 52 Park Ave., Suite B6, Park Ridge, NJ 07656, which may be served by and through its registered agent, Incorp Services, Inc., 1622 Main Street, East Hartford, CT

06108, or through its registered agent in Texas, Incorp Services, Inc., 815 Brazos St., Suite 500, Austin, TX 78701.

12. Defendant, Tru Verde, LLC, is a limited liability company with its principal offices located at 52 Park Ave., Suite B7-8, Park Ridge, NJ 07656, which may be served by and through its registered agent, Incorp Services, Inc., 1622 Main Street, East Hartford, CT 06108, or through its registered agent in Texas, Incorp Services, Inc., 815 Brazos St., Suite 500, Austin, TX 78701.

13. Defendant, Augsburg Energy, LLC, is a limited liability company with its principal offices located at 52 Park Ave., Suite B5, Park Ridge, NJ 07656, which may be served by and through its registered agent, Incorp Services, Inc., 1622 Main Street, East Hartford, CT 06108, or through its registered agent in Texas, Incorp Services, Inc., 815 Brazos St., Suite 500, Austin, TX 78701.

14. Defendant, Element Alternative Energy LLC ("Element"), is an Indiana limited liability company domiciled in the State of Oregon, which may be served by and through its registered agent, Incorp Services, Inc., 756 N. Main St., Suite K, Crown Point, IN 46307.

15. Defendant, Werks Management, LLC, is a limited liability company domiciled in the State of Indiana, which may be served by and through its registered agent, Chad D. Ducey, 12880 Elbe St., Fishers, IN 46037.

16. Defendant, Imperial Petroleum, Inc. ("Imperial"), is a corporation domiciled in the State of Indiana, which may be served at its principal business office at 4925 Greenville Ave., Suite 900, Dallas, TX 75206, or by and through its registered agent, Tim Jones, 6545

Albion Drive, Indianapolis, IN 47356, or its registered agent, CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, TX 75201.

17. Defendant, Vision Biodiesel, Inc., is a corporation domiciled in the State of Ohio, which may be served by and through its registered agent, Anthony W. Warnecke, 1001 Vision Drive, Van Wert, OH 45891.

18. Defendant, Ultra Green Energy Services, LLC ("Ultra Green"), is a Delaware limited liability company with its principal offices located at 141 W. Jackson Blvd., Suite 3736, Chicago, IL 60604.

19. Defendant, Astra Energy Canada, Inc., is a foreign corporation based in Canada, with its foreign principal office located at Centennial Place East Tower, Suite 3120, 520 – 3rd Avenue SW, Calgary, Alberta T2P 0R3, which may be served through its registered agent in the State of Minnesota, C T Corporation System, Inc., 405 2nd Avenue S., Minneapolis, MN 55401.

20. Defendant, Astra Oil Company, LLC, is a Delaware limited liability company with its principal office located at 301 Main Street, Suite 201, Huntington Beach, CA 92648, which may be served through its registered agent in the State of Texas, Veronica Veliz, 5718 Westheimer, Suite 1320, Houston, TX 77057.

21. Defendant, Flying J Inc. aka FJ Management, Inc., is a Utah corporation with its principal office located at 1104 Country Hills Drive, Suite 510, Ogden, UT 84403, which may be served through its registered agent in the State of Texas, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

22. Defendant, Joseph S. Furando ("Furando"), is an individual domiciled in the State of New Jersey who resides at 29 Ladik Pl., Montvale, NJ 07645-1405, or 23 Burning Hollow RD, Saddle River, NJ 07458.

23. Defendant, Christine M. Furando, is an individual domiciled in the State of New Jersey who resides at 29 Ladik Pl., Montvale, NJ 07645-1405, or 23 Burning Hollow RD, Saddle River, NJ 07458.

24. Defendant Evelyn Katarina Tracy aka Katarina Tracy, is an individual domiciled in the State of New Jersey who resides at 29 Ladlik Pl, Montvale NJ 07645.

25. Defendant, Craig D. Ducey, is an individual domiciled in the State of Indiana who resides at 10568 Madison Brooks Dr., Fishers, IN 46040-9421.

26. Defendant, Chad D. Ducey, is an individual domiciled in the State of Indiana who resides at 12880 Elbe St., Fishers, IN 46037-6239.

27. Defendant, Christopher D. Ducey, is an individual domiciled in the State of Indiana who resides at 40 EMS W26 Ln., North Webster, IN 46555-9532.

28. Defendant, Brian D. Carmichael, is an individual domiciled in the State of Oregon who resides at 64 Skyline Summit Loop, Bend, OR 97701.

29. Defendant, Alexander Chepurko, is an individual domiciled in the State of New Jersey who resides at 270 Union Ave., Apartment B6, Rutherford, NJ 07070-3508.

30. Defendant, Andrew Pollock, is an individual domiciled in the State of New York who resides at 17 Beth Ln, Plainview, NY 11803.

31. Defendant, Jeffrey T. Wilson, is an individual domiciled in the State of Indiana who resides at 11600 German Pines Dr., Evansville, IN 47725.

32. Defendant, Aaron Wilson, is an individual domiciled in the State of Indiana who resides at 5747 Shoreman Dr., Evansville, IN 47711.

33. Defendant, Robert "Jay" Pierce aka Jay Pierce, is an individual domiciled in the State of Illinois who resides at 141 W. Jackson, Ste. 3736, Chicago, IL 60604.

34. Defendant, Vern Manwarring, is an individual domiciled in the State of Indiana who resides at 4906 Southern Ave., Anderson, IN 46013.

35. Defendant, Troy McKee, is an individual domiciled in the State of Indiana who resides at 553 High St., Middletown, IN 47356.

36. Defendant, J. Gregory Thagard, is an individual domiciled in the State of Texas who resides at 8204 Marina Vista Cir., Leander, TX 78641.

### III.
### RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

37. Any and all acts alleged herein to have been committed by the Defendants were committed by officers, directors, employees, representatives or agents who at all times acted on behalf of their respective principals/employers and/or within the course and scope of their employment.

38. The Defendants are related entities sharing common employees, offices and business names such that they are jointly and severally liable under legal theories of respondeat superior. Further, the past, present and continuing relations and dealings by and between these Defendants are so inextricably intertwined that for purposes of this suit, some or all of them can and should be considered as a single entity at law and equity

## IV.
## JURISDICTION AND VENUE

39. Jurisdiction and venue are proper in the United States District Court for the Northern District of Texas pursuant to 31 U.S.C. § 3730(b)(1) and 31 U.S.C. § 3732(a) because at least one Defendant can be found, resides, and/or transacts business in this District. In addition, jurisdiction and venue are proper in this District because acts proscribed by § 3729 occurred in this District.

40. Relator qualifies as the "original source" of the information alleged herein under 31 U.S.C. § 3730(e)(4)(B) because (1) Relator voluntarily disclosed such information to the Government prior to any public disclosure of such information as set forth in 31 U.S.C. § 3730(e)(4)(A), or (2) Relator has knowledge that is independent of and materially adds to the publicly disclosed information, and Relator has voluntarily provided the information to the Government before filing this action.

## V.
## FACTS

**A.  Overview of the Energy Policy Act and Federal Regulation of Renewable Fuels**

41. To reduce dependence on foreign oil and to address climate change concerns, U.S. policymakers introduced a combination of policies to support the production and consumption of biofuels—transportation fuels produced from plants and other organic materials. The core element of U.S. biofuel policy is the Renewable Fuel Standard ("RFS"). The RFS

originated with the Energy Policy Act of 2005[1] and was expanded and extended by the Energy Independence and Security Act of 2007 ("EISA").

42. The provisions of the current renewable fuels regulations are known as the "RFS2." The RFS2 mandates inclusion of 15.2 billion gallons of renewable fuel in U.S. transportation fuel by 2012 and 36 billion gallons by 2022. Specific RFS2 mandates were created for various subcategories of biofuels—advanced biofuels,[2] cellulosic biofuels, and biomass-based diesel (biodiesel). The mandate for each subcategory of biofuel is defined by eligible feedstock types and lifecycle greenhouse gas (GHG) emission reductions.[3] On March 26, 2010, EPA issued final rules for RFS2, including lifecycle analysis methods necessary to categorize fuels as advanced biofuels, and new rules for RIN credit verification and trading. While this program is not a direct subsidy for the production of biofuels, the guaranteed market created by RFS2 provides a major source of revenue for parties who comply (or fraudulently claim compliance) with RFS2.

43. The RFS2 mandates are prorated among "obligated parties" based on their annual production and/or imports.[4] The "obligated parties" are individual producers or importers of

---

[1] The Energy Policy Act of 2005, 42 U.S.C. § 15801, amended section 211 of the Clean Air Act ("CAA"), 42 U.S.C. § 7545.

[2] Advanced biofuel is defined as any renewable fuel other than those derived from corn starch, which can apply to a variety of fuels, including biodiesel, cellulosic, and other alcohols.

[3] The EPA is required to apply lifecycle GHG performance threshold standards to ensure that each category of renewable fuel emits fewer GHGs than the petroleum fuel it replaces. Specifically, the lifecycle GHG emissions of qualifying renewable fuels must be at least 20 percent less than the lifecycle GHG emissions of the 2005 baseline average of petroleum fuel that it replaces. Similar rules apply to renewable fuels qualifying as advanced biofuel (50 percent), biomass-based diesel (50 percent) and cellulosic biofuel (60 percent).

[4] Generally, any refiner or importer of gasoline or diesel fuel in the U.S. mainland or Hawaii is an obligated party under the RFS2 and must comply with its quotas

gasoline and diesel in the 48 contiguous States and Hawaii, including blenders that produce gasoline from nonrenewable blendstocks. Each obligated party has a Renewable Volume Obligation ("RVO"), which dictates the amount of renewable fuels they are required to blend into non-renewable fuel for retail sale, per year. For example, in 2011, obligated parties were collectively required to blend a total of 13.95 billion gallons of renewable fuels. With the expanded RFS2 provisions, each obligated party has up to four RVOs to meet—total renewable fuel, advanced biofuel, biomass-based diesel, and cellulosic biofuel—to demonstrate compliance.[5]

44. The U.S. Environmental Protection Agency ("EPA") regulates the RVO of obligated parties through a system of tradable credits known as Renewable Identification Numbers ("RIN(s)"). A RIN is a 38-character numeric code that corresponds to a volume of renewable fuel produced in or imported to the United States. The RIN system plays a critical role in implementing the RFS2. As described above, obligated parties must meet their yearly RVO by accumulating RINs that represent an amount of renewable fuel sold or introduced into the stream of commerce in the United States. If an obligated party has not acquired enough RINs to meet its RVO then, under certain conditions, the party can carry a deficit into the next calendar year so long as the full deficit and that following year's obligation are covered in the next year. If an obligated party acquires more RINs than it needs to meet its RVO for a particular year, it can transfer the excess to another party or retain them for compliance with its RVOs in the following

---

[5] Previously, the initial RFS established one RVO (total renewable fuel) through 2012 and two RVOs (total renewable fuel and cellulosic biofuel) to be met in 2013. RFS2 requires that RVOs be calculated based on production or importation of both gasoline and diesel fuels.

year (subject to a 20 percent rollover cap). The rollover cap ensures that no more than 20 percent of a current-year obligation can be satisfied using RINs from the previous year.

45. Under the RFS2, domestic producers or importers of biofuel must generate a RIN for every batch of qualifying biofuel produced in or imported to the United States.[6] RIN generation involves assigning an appropriate numeric code to a particular batch of fuel in accordance with the provisions of 40 C.F.R. § 80.1125. A party is prohibited from generating RINs for a volume of biofuel if (A) the biofuel has been produced from a chemical conversion process that uses another biofuel as feedstock; and (B) the biofuel used as a feedstock was produced by another party. 40 C.F.R. § 80.1126(d)(8).

46. RINs become "attached" to each corresponding gallon or batch of renewable fuel at the time the RINs are generated. RINs remain attached to the renewable fuel as the renewable fuel moves through the distribution system and as ownership changes. Once the renewable fuel is blended into petroleum-based fuel, the RINs become "detached" from the renewable fuel and may be used for compliance, held for future compliance, or sold to other obligated parties. Producers and importers of biofuel must be registered with EPA to generate RINs and must also maintain comprehensive records regarding their generation of RINs, batch volume, batch number and type, quality of feedstock utilized, type and quality of fuel used to process heat, feedstock energy calculations, and commercial documents related to the detail of the production.

---

[6] Producers and importers of renewable fuel that produce or import less than 10,000 gallons of biofuel per year may, but are not required to, generate and assign RINs to their batches of renewable fuel. This means that these small producers and importers have the option to opt out of the RFS2 program. However, small producers and importers may "opt in" to the RFS2 program by voluntarily generating and assigning RINs to batches of fuel.