# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel* Alexander Chepurko, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:14-cv-00377-TWP-MJD ) |
| E-BIOFUELS, LLC, CARAVAN TRADING, LLC, CIMA GREEN, LLC, IMPERIAL PETROLEUM, INC., JOSEPH FURANDO, CHRISTINE FURANDO, CRAIG DUCEY, CHAD DUCEY, and JEFFREY T. WILSON, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |
| ALEXANDER CHEPURKO, | ) ) ) |
| Relator. | ) |

## ORDER ON MOTION TO DISMISS AND
## MOTION FOR JUDICIAL NOTICE OF EXHIBITS

This matter is before the Court on Defendant Christine Furando's ("Ms. Furando") Motion to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ([Filing No. 238](#)). Also pending before the Court is Plaintiff-Relator Alexander Chepurko's ("Chepurko") Motion for Judicial Notice of Exhibits ([Filing No. 256](#)). Chepurko blew the whistle on Ms. Furando and co-defendants e-Biofuels, LLC, Caravan Trading, LLC, Cima Green, LLC, Imperial Petroleum, Inc., Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson (collectively, "Defendants") for false claims submitted to the United States Government ("Government") for transactions in the renewable energy industry. Because of Chepurko's whistleblowing efforts, the Government was able to prosecute some of the Defendants named in this case, resulting in criminal

convictions. Chepurko separately filed this civil False Claims Act *qui tam* action against the Defendants to recover damages and civil penalties on behalf of the Government and himself.

Ms. Furando filed the instant Motion to Dismiss, asserting that Chepurko failed to state a viable claim against her and that this Court lacks subject matter jurisdiction over the claims. Chepurko filed a Motion asking the Court to take judicial notice of exhibits submitted in opposition to the Motion to Dismiss. For the following reasons, the Motion to Dismiss is **granted in part and denied in part**, and the Motion for Judicial Notice of Exhibits is **granted**.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all inferences in favor of Chepurko as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

The United States Congress adopted the Renewable Fuel Standard program ("RFS") to improve the nation's renewable energy industry and to reduce greenhouse gas emissions. The program encourages the production and use of renewable fuel in the United States. The Environmental Protection Agency ("EPA") was charged with developing, implementing, and enforcing the program through various regulations ([Filing No. 152 at 7](Filing No. 152 at 7)). The RFS program requires producers or importers of renewable fuel to generate fuel credits, known as a "renewable identification number" ("RIN"), in proportion to the amount and type of renewable fuel they produce or import. The RFS program also requires that non-renewable fuel refiners and importers, known as obligated parties, and renewable fuel exporters obtain valid RINs and retire those RINs each year by submitting them to the EPA. *Id.* at 7–8.

Renewable fuel producers have valid RINs only if their claim to the EPA to create the RINs is accurate and meets the regulations established by the EPA. Generating RINs for a volume of biodiesel that was not actually produced in compliance with EPA regulations is illegal. Generating RINs is permissible only based on renewable fuel and if the production process used to make that fuel meets specific regulatory criteria. It is illegal under the regulations to generate RINs more than once for any given volume of biodiesel. Renewable fuel producers are required to report data to the EPA about the production process and the feedstock used in production, and it is illegal to knowingly make material false statements in electronic or paper submissions to the EPA. Because of the regulations, the EPA assumes when RINs are generated by producers that biodiesel was actually produced and introduced into streams of commerce pursuant to the stringent requirements of the RFS program. *Id.* at 8.

The EPA developed a system of assigning a unique identification number—a RIN—to each batch of renewable fuel. A RIN is a 38-digit number that includes the fuel batch number, the identification number of the manufacturer who created or imported the batch of fuel, and the volume of fuel produced. The producer of a batch of renewable fuel creates the RIN for the batch. Once the RIN is created, it remains attached to that batch of renewable fuel until the fuel is blended with non-renewable fuel, at which point the RIN may be "separated" from the fuel and used for compliance with regulatory renewable volume obligations, held for future compliance, or traded. If the batch is divided before it is blended with non-renewable fuel, then the RIN is also divided. *Id.* at 8–9.

To track RIN transfers, the EPA developed a system called the EPA Moderated Transaction System. After a producer produces batches of renewable fuel and creates RINs, the producer must submit the new RINs to the transaction system within five days of the RINs' creation. The

transaction system screens each submission and either accepts or rejects the new RINs. All producers and importers of renewable fuel must retain all detailed, supporting records. Producers and anyone else who engages in fuel manufacture and RIN transactions must also submit quarterly reports to the EPA, detailing all fuel and RIN generation and transactions for that quarter. *Id.* at 9–10.

The EPA has established regulations to regulate the generation and transfer of RINs. The regulations direct proper creation of RINs, validity of RINs, who may transfer or receive RINs, the production process of renewable fuel to support the creation of RINs, and the use of RINs to satisfy regulatory obligations. Violating the regulations, or causing others to violate the regulations, exposes the violator to civil, criminal, and administrative penalties ([Filing No. 152 at 10](#)–11). When individuals violate the law or regulations, the EPA issues a "notice of violation" to the individual. *Id.* at 12. The EPA pursues enforcement actions against renewable fuel producers and importers that generate invalid RINs. *Id.* at 7.

Before filing this lawsuit, Chepurko contacted the Government on October 11, 2011, to disclose information about false claims that had been submitted to the Government. Between October 2011 and April 2012, Chepurko voluntarily disclosed to the Government through written disclosures and in-person meetings extensive information that in turn was used as the basis for the allegations of this lawsuit. Chepurko and his counsel met with representatives of the United States Attorney's Office, the Internal Revenue Service, the EPA, the Department of Justice, and the Securities and Exchange Commission ([Filing No. 152 at 3](#)).

Based on Chepurko's disclosures, the Government conducted criminal and civil investigations of the Defendants named in this action. The EPA issued notices of violation against some of the Defendants as well as against some of the customers of the Defendants who were

4

pulled into the Defendants' fraudulent scheme. At least one civil action, one administrative action, and two criminal actions were filed by the Government based on the information disclosed by Chepurko. *Id.* at 3–4, 13.

Defendant Imperial Petroleum, Inc. ("Imperial") is located in Evansville, Indiana, and is the parent company of Defendant e-Biofuels, LLC ("e-Biofuels"). Located in Middletown, Indiana, e-Biofuels is the entity in this action that falsely claimed to produce biodiesel for which fraudulent RINs were created. Defendant Jeffrey Wilson was the chairman and president of Imperial. Defendant Craig Ducey was the chief executive officer of e-Biofuels, and Defendant Chad Ducey was the chief operating officer of e-Biofuels. *Id.* at 5–7.

Defendant Caravan Trading, LLC ("Caravan") is located in Ramsey, New Jersey. Caravan sold RIN-less biodiesel to e-Biofuels that e-Biofuels falsely claimed it produced. Defendant Cima Green, LLC ("Cima Green") also is located in Ramsey, New Jersey. Defendant Joseph Furando ("Mr. Furando") is the chief executive officer and part owner of Caravan and Cima Green. Christine Furando is married to Joseph Furando, and she also is a part owner of Caravan and Cima Green. *Id.* Mr. Furando and Jeffrey Wilson were criminally convicted and are presently in federal prison for their involvement in the fraudulent scheme alleged in this civil action. *Id.* at 5–6.

The alleged fraudulent scheme which Chepurko disclosed to the Government, consisted of e-Biofuels claiming to manufacture biodiesel from chicken fat and other organic "feedstock"—the raw materials from which biodiesel fuel is manufactured. However, in actuality, e-Biofuels was not manufacturing biodiesel fuel in any significant quantity. Rather, it simply purchased RIN-less biodiesel from Astra Oil Company ("Astra") via Caravan, transported the fuel to its Indiana facility, and then resold the fuel as though it had been produced at its facility ([Filing No. 152 at 13](Filing No. 152 at 13)).

Between May 2010 and the summer of 2012, after separating and retiring RINs, Astra sold RIN-less fuel to Caravan. Caravan then resold the RIN-less fuel it had purchased from Astra to Imperial and e-Biofuels. Caravan also created internal records to give the impression that it was selling Imperial and e-Biofuels "feedstock" as opposed to finished biodiesel. *Id.* at 15. Once Imperial and e-Biofuels took possession of the RIN-less biodiesel fuel, they generated new RINs for that volume of fuel as though the biodiesel fuel had been produced at the e-Biofuels facility. The creation of new RINs for the same fuel was illegal and was made possible after Astra had stripped off the RINs and made a profit from the RINs or used the RINs to meet requirements of the federal program. *Id.* Imperial and e-Biofuels then either sold the fuel with the falsely generated RINs attached or separated the falsely generated RINs to sell independently. They also falsely labeled some of the biodiesel fuel before selling it. *Id.* at 16.

Imperial and e-Biofuels submitted false reports and statements to the EPA, falsely registering the new RINs to conceal their scheme, to avoid paying penalties, and to obtain tax credits. *Id.* at 14, 17. The Defendants knowingly generated and conspired to generate invalid RINs for biodiesel for which RINs previously had been generated. *Id.* at 14. More than 33.5 million RINs generated by e-Biofuels were invalid because they were generated without producing any qualifying renewable fuel. The majority of these invalid RINs were transferred to others. *Id.* at 13. The false claims and fraudulent conduct in generating more than 33.5 million invalid biodiesel RINs was possible because of the agreement among and involvement of each of the Defendants. *Id.*

This False Claims Act *qui tam* action, brought pursuant to 31 U.S.C. § 3729, *et seq.*, was initiated in June 2012 under case number 1:12-cv-786-TWP-MJD. In September 2013, Caravan, Cima Green, Mr. Furando, e-Biofuels and its officers, and others were charged by the Government

in a related criminal case. They were charged with conspiracy to defraud the Government, submitting false claims to the Government, making false statements under the Clean Air Act, and other criminal violations. The criminal charges were based on the same facts of this civil action. *See United States v. Ducey, et. al.*, No. 1:13-cr-189-SEB-TAB, Docket No. 1. Jeffrey Wilson of Imperial and Craig Ducey of e-Biofuels were separately charged by the Government in another related criminal case in September 2013. That separate criminal case was based on the same facts of this civil action and included charges for false statements made to the Securities and Exchange Commission. *See United States v. Wilson and Ducey*, No. 1:13-cr-190-SEB-TAB, Docket No. 1.

On August 5, 2014, Chepurko's *qui tam* action under case number 1:12-cv-786-TWP-MJD was consolidated under this case number (1:14-cv-377-TWP-MJD), and Chepurko's Amended Complaint was docketed ([Filing No. 52](Filing No. 52); [Filing No. 65](Filing No. 65)). The Amended Complaint asserted three claims against Ms. Furando, Mr. Furando, e-Biofuels, Caravan, Cima Green, Imperial, Craig Ducey, Chad Ducey, Jeffrey Wilson, and others.

On April 15, 2015, Ms. Furando personally appeared before the district court in the related criminal case as the representative of Caravan and Cima Green. Ms. Furando, on behalf of these companies, pled guilty pursuant to a written plea agreement that she had signed. *See United States v. Ducey, et. al.*, No. 1:13-cr-189-SEB-TAB, Docket Nos. 191, 193, 194. Judgments were entered against Caravan and Cima Green, and the entities were held jointly and severally liable with the other criminal defendants for more than $56 million of restitution. *See United States v. Ducey, et. al.*, No. 1:13-cr-189-SEB-TAB, Docket Nos. 314, 316.

Chepurko initially included Ms. Furando as a named defendant in this action; however, he voluntarily dismissed without prejudice Ms. Furando as a defendant on April 28, 2017, after the related criminal case was concluded ([Filing No. 112](Filing No. 112)). About a month later, the Government began

forfeiture proceedings in the related criminal case, seeking forfeiture of property to satisfy the judgments in the criminal case. The district court issued preliminary orders of forfeiture on May 30, 2017, against Caravan, Cima Green, and the other criminal defendants. *See United States v. Ducey, et. al.*, No. 1:13-cr-189-SEB-TAB, Docket Nos. 418–23, 424–29.

On June 30, 2017, Ms. Furando filed a petition in the related criminal case, asserting that much of the property subject to the preliminary orders of forfeiture belonged to her personally or to other limited liability companies that she owned with her husband, Mr. Furando. Ms. Furando's petition asked the district court to adjudicate the validity of her (and the other limited liability companies') interest in the property subject to forfeiture. *See United States v. Ducey, et. al.*, No. 1:13-cr-189-SEB-TAB, Docket No. 432. In response to Ms. Furando's petition in the forfeiture proceedings, Chepurko filed a Second Amended Complaint and First Supplemental Complaint in this False Claims Act *qui tam* civil action on September 8, 2017 ([Filing No. 152](#)). The Second Amended Complaint reasserted the original claims against Ms. Furando and added a new claim against her (Count IV) for submitting a false claim to the Government by way of her petition in the forfeiture proceedings. Ms. Furando filed her Motion to Dismiss on March 23, 2018, asserting that this Court lacks subject matter jurisdiction over the claims in Count IV, and regarding the other claims, plaintiff failed to state a viable claim against her. ([Filing No. 238](#)).

## II. <u>LEGAL STANDARD</u>

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent

proof." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Furthermore, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of

a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

Ms. Furando asks the Court to dismiss Chepurko's claims asserted against her, arguing that the Court lacks subject matter jurisdiction over the claims and Chepurko failed to state a viable claim. Also pending before the Court is Chepurko's Motion asking the Court to take judicial notice of exhibits filed in support of his response to the Motion to Dismiss. The Court will first address the Motion for Judicial Notice of Exhibits and then turn to the Motion to Dismiss.

#### A. Chepurko's Motion for Judicial Notice of Exhibits

Chepurko filed twelve exhibits with his response brief to the Motion to Dismiss. The exhibits are publicly available documents that were filed in or are part of the official record in the criminal cases that are related to this action (No. 1:13-cr-189-SEB-TAB, No. 1:13-cr-190-SEB-TAB).[1] Chepurko asserts that there can be no dispute that these exhibits, some of which are cited in the Second Amended Complaint and also cited by Ms. Furando in support of her Motion to Dismiss, are subject to judicial notice.

---

[1] The exhibits are a plea agreement, criminal judgments, transcripts from a change of plea hearing and trial, a petition to intervene, an ECF email notice from the district court, a court order denying a motion to intervene, and preliminary orders of forfeiture.

10

Ms. Furando responds that she "takes no position as to the Court taking judicial notice of the following Exhibits: 1 through 7 and 9." (Filing No. 271 at 1.) However, she "objects to the Court taking judicial notice of Exhibits 8 and 10 through 12." *Id.* at 1–2.

Exhibit 8 is an excerpt of a closing argument from a Government attorney in the related criminal matter, and Ms. Furando contends the argument is not considered a "fact" or evidence. *See Mayall v. Peabody Coal Co.*, 7 F.3d 570, 573 (7th Cir. 1993) (closing arguments of counsel are not evidence). Thus, she asserts, this excerpt from the trial transcript is not a "fact" for which judicial notice can be taken.

She argues that Exhibits 10–12 are preliminary orders of forfeiture and by their very nature are not final orders. Ms. Furando notes that these orders are subject to being amended or vacated, and in fact, a petition is currently pending in the criminal matter to determine the proper scope of the preliminary orders. Additionally, she asserts that the "facts" which Chepurko is attempting to establish by using Exhibits 8 and 10–12, are critical to issues in this case and are in dispute in consideration of the Motion to Dismiss. Thus, Ms. Furando argues, judicial notice is not appropriate.

Chepurko replies that "statements made by counsel in closing arguments have and should be judicially noticed, not for their absolute truth, but simply for the fact that they were said." (Filing No. 272 at 2 (citing *Credico v. Fein*, 2013 U.S. Dist. LEXIS 151727, at *1 (E.D. Pa. Oct. 22, 2013) ("The Court also takes judicial notice of the fact that, in his closing argument, Fein described Manning as an 'anarchist' and 'traitor,' and described Wikileaks staff as 'essentially information anarchists.'"); *United States v. $26,660 in U.S. Currency*, 777 F.2d 111, 112 (2d Cir. 1985) ("The closing argument of appellant's counsel in that case, of which we may take judicial notice, was that Caci signed the form 'believing that it said fifty thousand dollars.'")). He asserts that the

Court can and should take judicial notice that the Government attorney made certain statements during the related criminal trial as noted on the public record.

Concerning Exhibits 10–12, Chepurko contends he is not requesting judicial notice of the finality of the preliminary forfeiture orders or the facts contained in those preliminary orders. Rather, he seeks judicial notice that, at the time Ms. Furando filed her petition in the related criminal matter, the district court in that case had issued preliminary orders stating the Government held title to the property subject to forfeiture.

Federal Rule of Evidence 201 provides that a district court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Judicial notice can be taken of "an adjudicative fact" where the fact "is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(a)–(c).

"In ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment." *Anderson v. Simon*, 217 F.3d 472, 474–75 (7th Cir. 2000). *See also Pelkofer v. Rapiscan Sys.*, 2014 U.S. Dist. LEXIS 100060, at *4–5 (S.D. Ind. July 23, 2014) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (court permissibly considered public court documents filed in earlier Indiana state case when deciding motion to dismiss)).

Ms. Furando does not object to the Court taking judicial notice of Exhibits 1–7 and 9. The Court agrees with the position and arguments of Chepurko, which are supported by good case law, concerning taking judicial notice of Exhibits 8 and 10–12. Those exhibits, like Exhibits 1–7 and 9, are each part of the official, public record of another court of this Federal District. They are not

subject to reasonable dispute and can be accurately and readily determined from sources—the federal court's public docket—whose accuracy cannot reasonably be questioned.

Therefore, the Court **GRANTS** Chepurko's Motion for Judicial Notice of Exhibits ([Filing No. 256](#)). The Court notes that, as to Exhibits 10–12, it takes judicial notice that, at the time Ms. Furando filed her petition in the related criminal matter, the district court in that case had issued preliminary forfeiture orders, not that "the court in those proceedings had ordered that the United States held title to that property." ([Filing No. 272 at 5](#).)

**B.**     **Ms. Furando's Motion to Dismiss**

In her Motion to Dismiss, Ms. Furando asks the Court to:

> enter an order dismissing Count IV of the Second Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and dismissing the entirety of the Second Amended Complaint as to Christine Furando with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

([Filing No. 238 at 3](#).)

**1.**     **Counts I–III**

Chepurko asserts that Ms. Furando offered absolutely no argument or support for her request to dismiss Counts I–III of the Second Amended Complaint. As the moving party, Ms. Furando had the heavy burden of showing that dismissal is warranted under Rule 12(b)(6), and she offered nothing to support her Motion regarding the first three counts. Ms. Furando's supporting brief never even mentioned Counts I–III. Chepurko asserts that the Second Amended Complaint alleges a sufficient factual basis to support his False Claims Act claims, and Ms. Furando failed to show dismissal is appropriate.

He also points out that Ms. Furando makes a passing reference to the pleading standard under Federal Rule of Civil Procedure 9(b) that is applicable to *qui tam* False Claims Act

complaints. *See* Filing No. 239 at 3–4. However, Ms. Furando's supporting brief fails to raise any argument that Chepurko did not meet the Rule 9(b) pleading standard, and Chepurko asserts that his Second Amended Complaint does meet the Rule 9(b) pleading standard.

Ms. Furando's Motion and supporting briefs do not discuss, analyze, argue, or support her request for dismissal of Counts I–III or her threadbare reference to the Rule 9(b) pleading standard. The Seventh Circuit has been clear that issues must be raised in opening briefs and must be developed through argument supported by legal authority. *See Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 758 (7th Cir. 2012) ("because appellants did not raise this issue in their opening briefs, they waived any argument on this ruling"); *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (argument addressed in two sentences in opening brief deemed waived); *Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002) (where party fails to support position with any legal analysis or citation, the argument is waived); *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

In fact, even with notice from Chepurko's response brief that she had failed to argue these issues in her opening brief, Ms. Furando failed in her reply brief to argue Counts I–III and the Rule 9(b) pleading standard. Her request for relief in the reply brief simply states that she "prays this Honorable Court to enter an order dismissing Count IV of the Second Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6)." (Filing No. 270 at 20.)

"The Seventh Circuit has clearly held that a party who fails to respond to points made . . . concedes those points." *Myers v. Thoman*, 2010 U.S. Dist. LEXIS 107502, at *11 (S.D. Ind. Oct.

6, 2010). *See also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession.); *Cintora v. Downey*, 2010 U.S. Dist. LEXIS 19763, at *12 (C.D. Ill. Mar. 4, 2010) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession."); *Sequel Capital, LLC v. Pearson*, 2010 U.S. Dist. LEXIS 109087, at *22 (N.D. Ill. Oct. 12, 2010) (same); *Thomas v. Am. Family Mut. Ins. Co.*, 2008 U.S. Dist. LEXIS 92440, at *13–14 (N.D. Ind. Nov. 13, 2008) (same).

Because Ms. Furando did not discuss, analyze, argue, or support with pertinent authority her request for dismissal of Counts I–III or her threadbare reference to the Rule 9(b) pleading standard in either her opening brief or her reply brief, the Court **DENIES** Ms. Furando's Motion to Dismiss as to Counts I–III and disregards the Rule 9(b) reference. This determination is further supported by Ms. Furando's request in her reply brief that the Court dismiss Count IV of the Second Amended Complaint, without reference to Counts I–III.

### 2. Count IV

The Court now turns to the request to dismiss Count IV of the Second Amended Complaint. Ms. Furando argues that Count IV should be dismissed because the Court lacks subject matter jurisdiction to consider the claim, and Chepurko failed to adequately plead a viable claim.

There is "no unyielding jurisdictional hierarchy" that requires a court to consider subject matter jurisdiction before personal jurisdiction, but jurisdictional issues must be decided before merits issues. *See Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 577–78 (1999). Thus, a district court first must satisfy itself that it can exercise jurisdiction before addressing the merits of a case. Accordingly, the Court must consider the Motion to Dismiss Count IV under Rule 12(b)(1) before it can address the Motion under Rule 12(b)(6). If the Court determines that it lacks jurisdiction

under Rule 12(b)(1), it would be improper for the Court to reach the merits under Rule 12(b)(6). *Id.*; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Rawlins v. Select Specialty Hosp. of Nw. Ind., Inc.*, 2014 U.S. Dist. LEXIS 57076, at *5 (N.D. Ill. Apr. 23, 2014). "'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *United States v. Rachuy*, 743 F.3d 205, 211 (7th Cir. 2014) (quoting *Steel*, 523 U.S. at 94). Therefore, the Court first addresses Ms. Furando's subject matter jurisdiction argument.

Count IV of the Second Amended Complaint alleges that Ms. Furando submitted a false claim to the Government when she filed her petition in the related criminal matter of *United States v. Ducey, et. al.*, Case No. 1:13-cr-189-SEB-TAB, Docket No. 432. Ms. Furando petitioned the district court to adjudicate the validity of her interest in the property seized in the criminal matter against her spouse, Mr. Furando, which is subject to preliminary orders of forfeiture. In Count IV, Chepurko alleges that Ms. Furando knew that millions of dollars of seized assets were illegally obtained through the biodiesel fraud scheme, and thus, by filing her petition in the forfeiture proceedings to claim interest in those assets, she has submitted a false claim to the Government ([Filing No. 152 at 45](Filing No. 152 at 45)).

Ms. Furando argues this Court lacks subject matter jurisdiction to consider Count IV because it is based entirely on her petition filed in the related criminal matter. She argues that pursuant to 21 U.S.C. § 853, Sarah Evans Barker, the district court judge presiding over the forfeiture proceedings in Case Number 1:13-cr-189-SEB-TAB, has exclusive jurisdiction to consider and determine the validity of the forfeiture petition. "Judge Barker will decide, in the first instance, whether Christine Furando's claim is valid or invalid. Thus, respectfully, the validity

of Christine Furando's Petition filed in connection with matters pending before Judge Barker, is not within the jurisdiction of this Court." (Filing No. 239 at 4–5.)

Ms. Furando asserts that Count IV is a claim for violation of the False Claims Act; thus, the claim in this case alleges a false claim submitted to the Government in Judge Barker's case, the validity of that claim must be determined by Judge Barker. "The entire subject matter of Count IV hinges on the validity or invalidity of Christine Furando's petition filed in the related criminal case. Therefore, Judge Barker has exclusive jurisdiction of the subject matter alleged in Count IV to the exclusion of this Court." *Id.* at 5. Ms. Furando additionally argues there is no jurisdiction to consider Count IV because of the False Claims Act's "public disclosure bar" and "government action bar."[2]

In response to the jurisdictional arguments, Chepurko asserts that "criminal forfeiture proceedings in which Ms. Furando submitted her Petition, and which Mr. Chepurko has been denied leave to intervene, does not retain exclusive jurisdiction over the potential civil liability pursuant to the False Claims Act that stems from that false submission." (Filing No. 255 at 10.) The False Claims Act has provided for *qui tam* civil actions to be brought by relators (*i.e.* private parties bringing an action on behalf of the Government and on behalf of themselves) independent of any criminal proceedings, where the private party can assert a civil claim for violations of the False Claims Act. Chepurko asserts that the Government declined to intervene to pursue any of the claims alleged in this case, so he has the right to pursue his False Claims Act claims in this

---

[2] Chepurko argues that the "public disclosure bar" is no longer a "jurisdictional" bar and must be decided under Rule 12(b)(6) rather than 12(b)(1), and further, that the procedural and factual circumstances of this case avoid application of the "public disclosure bar" and "government action bar" to Count IV. The Court declines to resolve these arguments because of its determination regarding Judge Barker's exclusive jurisdiction over the validity of Ms. Furando's petition.

17

Court. He further argues that, if this Court dismisses Count IV, then no court would consider his factual allegations because his motion to intervene in the criminal case was denied.

Ms. Furando replies that the essential elements of Chepurko's allegations are that she submitted a "false claim" in the form of a judicial petition before Judge Barker. Ms. Furando's petition asks Judge Barker to determine the validity of Ms. Furando's interest in property subject to preliminary forfeiture orders. The jurisdiction of the district court to determine property rights in forfeiture proceedings comes from 21 U.S.C. § 853, and that jurisdiction is exclusive. Therefore, Ms. Furando argues, all questions of title to the property, which is the subject of the petition, are under the exclusive jurisdiction of Judge Barker. Judge Barker will decide whether to grant or deny the petition, which is a determination of the validity of the petition, and if the petition is valid, then it cannot be a false claim. She further contends that Chepurko's concern that no court will consider his factual allegations found in Count IV is meritless because the Government can raise these allegations in the forfeiture proceedings in case number 1:13-cr-189-SEB-TAB.

The Court determines that Count IV of Chepurko's Second Amended Complaint is based on the validity and veracity of the petition that Ms. Furando filed in forfeiture proceedings in Case Number 1:13-cr-189-SEB-TAB, which is now pending in Judge Barker's court. As such, the validity and veracity of Ms. Furando's petition is a determination to be made by Judge Barker. Accordingly, this Court lacks jurisdiction to consider Count IV of Chepurko's Second Amended Complaint, and Ms. Furando's Motion to Dismiss as to Count IV is **GRANTED**.

### IV. CONCLUSION

For the foregoing reasons, Ms. Furando's Motion to Dismiss ([Filing No. 238](Filing No. 238)) is **GRANTED in part and DENIED in part**. Count IV of the Second Amended Complaint is

dismissed; however, Counts I–III remain pending. Additionally, Chepurko's Motion for Judicial Notice of Exhibits ([Filing No. 256](Filing No. 256)) is **GRANTED**.

    **SO ORDERED.**

Date: 1/10/2019

*Tanya Walton Pratt*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Caravan Trading, LLC
.52 Park Ave.
Park Ridge, New Jersey 07656

Cima Green, LLC
.52 Par Ave., Suite A-7
Park Ridge, New Jersey 07656

Joseph Furando, #65853-050
Fort Dix Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 2000
Joint Base MDL, New Jersey 08640

Chad Ducey, #11801-028
Terre Haute Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, Indiana 47808

Joyce R Branda
US ATTORNEY'S OFFICE
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044

David K. Colapinto
KOHN & COLAPINTO
dc@kkc.com

John Andrew Goodridge
JOHN ANDREW GOODRIDGE LAW OFFICE
jagoodridge@jaglo.com

Tracy Lyle Hilmer
US DEPARTMENT OF JUSTICE - Civil Division
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044

Stephen Martin Kohn
KOHN & COLAPINTO LLP
smk@kkc.com

Stephen M. Komie
KOMIE AND ASSOCIATES
stephen_m_komie@komie-and-associates.com

Brian J. McCabe
US DEPARTMENT OF JUSTICE - Civil Division
brian.mccabe@usdoj.gov

Theodore J. Minch
SOVICH MINCH LLP
tjminch@sovichminch.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov