UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEXANDER CHEPURKO, | )<br>)<br>) |
| Plaintiff-Relator, | )<br>) |
| v. | ) No. 1:14-cv-00377-TWP-MJD<br>) |
| E-BIOFUELS, LLC., *et al.,* | )<br>) |
| Defendants. | ) |

**ORDER ON MOTION FOR SANCTIONS AND DEFAULT JUDGMENT**

This matter is before the Court on Plaintiff-Relator Alexander Chepurko's Motion for Sanctions and Default Judgment Pursuant to Rule 37(b) as to Defendant Christine Furando's Failure to Obey a Discovery Order [Dkt. 374]. For the reasons set forth below, the Court **DENIES** the motion.

**I. Background**

Defendant Christine Furando (hereinafter referred to as "Furando") and her husband, Joseph Furando, owned two companies, Caravan Trading, LLC ("Caravan") and Cima Green, LLC ("Cima") (hereinafter "the Companies"), which were used in a biodiesel scheme to defraud the Environmental Protection Agency through its Renewable Fuel Standards program. In related criminal cases, Joseph Furando, the Companies, and others were convicted of defrauding the United States and ordered to pay restitution of more than $56 million. In this case, which is brought pursuant to the False Claims Act, Plaintiff-Relator Chepurko seeks to recover, on behalf of the United States, amounts he alleges were obtained by the Defendants through this scheme.

Furando, who was the majority owner of the Companies, was not indicted for any criminal offense. She alleges that her husband actually controlled the Companies and that she was an innocent spouse, unaware of any misdeeds by her husband. However, Furando signed plea agreements and the factual bases for the agreements on behalf of Cima and Caravan and personally appeared as the representative of Cima and Caravan to plead guilty on their behalf in the related criminal case.

On July 26, 2019, the Court granted Chepurko's motion to compel Furando to provide complete answers to Chepurko's interrogatories and document requests. [Dkt. 365.] The discovery requests that were the subject of that motion sought information and documents regarding the biodiesel scheme, Furando's role in the Companies, and the assets of Furando, her husband, and their companies. In its order granting the motion to compel, the Court found that Furando had waived her objections to the discovery requests by failing to respond to them in a timely manner. In fact, Furando missed her deadline to respond to the requests by many months. The Court also found that Furando's objections would have been overruled even if they had not been waived. The Court ordered Furando to do the following within 21 days of the date of the Order:

> Furando shall serve properly verified supplemental interrogatory responses to Interrogatories Nos. 1, 2, 6, 7, 8, and 9, that comply with the Court's instructions set forth above, including setting forth, in detail, Furando's efforts to obtain responsive information from other sources. These responses shall be comprehensive—that is, they shall not just include any new information, but shall also include all previous information provided in response to all of Plaintiff-Relator's Interrogatories, so that the entirety of each response is properly verified.

*Id.* at 14.

## II. Discussion

In the instant motion, Chepurko takes issue with the information provided by Furando in response to the Court's order on the motion to compel (hereinafter referred to as "Amended Response") with regard to Interrogatory No. 1 and Interrogatories Nos. 7 and 9. Chepurko argues that Furando willfully failed to comply with the Court's order and that the sanction of entry of default judgment against her is the appropriate remedy for that failure.

### *Interrogatory No. 1*

Interrogatory No. 1 reads as follows:

> Identify the name and, if known, the address and telephone number of each individual likely to have discoverable information about the claims or defenses in this action—along with the subjects of that information.

[Dkt. 375-1 at 3.] Chepurko argues that Furando's Amended Response to this interrogatory failed to comply with the Court's requirement that she give a comprehensive response because it omits three individuals who were listed in her original response. In her response to the instant motion, Furando explains that one of the three individuals is now deceased and the other two were originally listed erroneously, as they are potential character witnesses but are not "likely to have discoverable information about the claims or defenses in this action," which is what the interrogatory seeks. While it certainly would have been preferable for Furando to include this information in her Amended Response, the failure to do so, by itself, clearly is not grounds for default judgment. Furando did not omit responsive information in her Amended Response, and her failure to explain the absence of the three individuals could have been cleared up with a simple phone call or email.

*Interrogatories Nos. 7 and 9*

Interrogatories Nos. 7 and 9 and Furando's original responses thereto read as follow:

7. Please explain your claim to ownership of any of the assets seized by the government and that are subject to the forfeiture orders that were the subject of the plea agreement that you signed and entered into as an owner of the two companies, [Caravan and Cima].

    Response: I am a Member only. See claim filed in case number 13-cr-00189, Doc. 432.

9. For each asset or real estate that has been seized by the government and is subject to any forfeiture order for which you claim to be the rightful owner describe the sources and amounts of income used to purchase each asset or real estate, identify the date of purchase and each person or entity who purchased the asset or real estate; identify the approximate dates on which those sources of income used to purchase the assets or real estate were earned, and by whom; and identify the bank accounts from which each payment for the purchase of each such asset or real estate originated.

    Response: Objection. This interrogatory is [sic] contains multiple compound questions which assume numerous facts; it is vague and ambiguous; overly broad, unduly burdensome and vexatious.

    Nevertheless, at this time I am unable to answer these questions as I do not recall without my memory being refreshed by documents. On information and belief the documents responsive to these requests have been seized by agents of the federal government.

[Dkt. 353-12 at 7-8.] As to each of these interrogatories, Furando's response in her Amended Response was: "On advice of counsel, at this time I invoke my right under the Fifth Amendment not to answer this question on the grounds I may incriminate myself." [Dkt. 375-1 at 21, 24.]

Chepurko argues that the Court's ruling in its order on the motion to compel that Furando had waived her objections to the discovery requests by failing to provide timely responses to them encompassed her invocation of her Fifth Amendment rights. Therefore, he argues,

4

Furando's attempt to invoke those rights in her Amended Response constituted a willful failure to comply with the Court's order which justifies the sanction of entry of default judgment.

The Court disagrees with the premise of Chepurko's argument. Invoking one's right under the Fifth Amendment is not an "objection," and the Court certainly did not intend its ruling that Furando had waived her objections to include an implicit finding that she also had waived the fundamental right against self-incrimination. Therefore, Furando's responses did not violate the Court's order.

The Court recognizes that Chepurko cites to cases that, to varying degrees, support his argument. *See* [Dkt. 375 at 7 n.4]. With all due respect, the Court finds that the cited cases are based on a mistaken reading of Supreme Court precedent. Each of them ultimately relies on various Supreme Court cases that include some variation of the statement that the Fifth Amendment privilege "is not a self-executing mechanism; it can be affirmatively waived, or lost by not asserting it in a timely fashion." *See Adams v. Cananagh Communities Corp.*, 1988 WL 64097 at *1 (N.D. Ill. 1988) (citing *Maness v. Meyers,* 419 U.S. 449, 466 (1975)); *United Auto. Ins. Co. v. Veluchamy*, 747 F.Supp.2d 1021, 1026 (N.D. Ill. 2010) (citing *Roberts v. United States*, 445 U.S. 552, 559 (1980)); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (citing *Maness*); *S.E.C. v. Kiselak Capital Group, LLC*, 2011 WL 4398443 (N.D. Tx. 2011) (citing *Davis*); *U.S. Commodity Futures Trading Commission v. American Bullion Exchange Abex Corp., et al.*, 2014 WL 12601560 (C.D. Cal. 2014) (citing *Davis*); *In re Wolf*, No. 14 B 27066, 2018 WL 2386813 (Bankr. N.D. Ill. May 24, 2018) (citing, *inter alia, Maness* and *Davis*).[1] But

---

[1] Chepurko cites to *United States v. Mickman,* 1992 WL 74173, at *1 (E.D. Pa. Mar. 27, 1992), as supporting its request for default judgment. *Mickman* involved discovery requests served on two corporate defendants. After the corporate defendants failed to respond to the requests in any

5

the Supreme Court cases on which these cases rely simply do not stand for the proposition that a litigant can lose the privilege against self-incrimination by failing to assert it in her initial response to discovery requests, or by failing to answer discovery requests in a timely manner. *Roberts* involved a criminal defendant who argued that his failure to assist in a criminal investigation should not have been considered as a sentencing factor because it amounted to punishing him for exercising his Fifth Amendment right. The Court held that the defendant's failure to bring the issue "in some manner . . . to the attention of the tribunal which must pass upon it," 445 U.S. at 560, that is, the sentencing judge, meant that he had waived the argument. *Maness* involved the issue of whether an attorney could be held in contempt for advising his client to assert the privilege against self-incrimination. The Supreme Court noted:

---

way, the plaintiff filed a motion to compel, which was granted. The corporate defendants still made no response. The plaintiff then filed a motion for sanctions, to which the corporate defendants also made no response. The court granted the motion for sanctions and ordered the corporate defendants to make complete responses or face default judgments. In response to that order, counsel for the corporate defendants sent a letter to the court stating that the corporate defendants were unable to prepare any answers to the discovery requests "because defendant Mark Mickman, 'the sole director and officer of both corporations and . . . the only individual in a position to respond to discovery on behalf of the corporations,' had elected to exercise his Fifth Amendment privilege, and would not provide any information responsive to plaintiff's requests." *Id.* at *2. In ruling on the plaintiff's motion for default judgment against the corporate defendants, the court held that default judgment was appropriate because "[a]s a corporation, the corporate defendants have no Fifth Amendment privilege," *id.* at *4 (citing *Braswell v. United States,* 487 U.S. 99, 102 (1988), and although Mickman, as an individual, was likely "entitled to refuse to provide any oral testimony . . . including answers to interrogatories, this does not relieve the corporation of its duty to answer them." Rather, "[u]nder these circumstances, the corporation has an obligation to appoint an agent who can, without fear of self-incrimination, furnish the requested information." *Id.* (citing *United States v. Kordel*, 397 U.S. 1, 8 (1970)). Further, the court found that "[i]f the defendants were legitimately unable to respond because of Mr. Mickman's assertion of the privilege, they were required to submit timely responses asserting their inability to comply with individual requests on this ground . . . [or, a]lternatively, they might have applied for a protective order under Rule 26(c)." *Id.* They did neither, despite being given a second opportunity by the court. It is disingenuous of Chepurko to assert that these facts are "almost identical[] to the circumstances here." [Dkt. 375 at 12.]

6

> The privilege against compelled self-incrimination would be drained of its meaning if counsel, being lawfully present, as here, could be penalized for advising his client in good faith to assert it. The assertion of a testimonial privilege, as of many other rights, often depends upon legal advice from someone who is trained and skilled in the subject matter, and who may offer a more objective opinion. A layman may not be aware of the precise scope, the nuances, and boundaries of his Fifth Amendment privilege. It is not a self-executing mechanism; it can be affirmatively waived, or lost by not asserting it in a timely fashion. If performance of a lawyer's duty to advise a client that a privilege is available exposes a lawyer to the threat of contempt for giving honest advice it is hardly debatable that some advocates may lose their zeal for forthrightness and independence.

*Maness*, 419 U.S. at 465-66 (footnotes omitted). The waiver alluded to by the Supreme Court would occur if the client gave incriminating testimony. *Cf. Minnesota v. Murphy*, 465 U.S. 420, 429 (1984) ("[A] witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself."); *United States v. Kordel*, 397 U.S. 1, 10 (1970) (person who provided answers to interrogatories in civil case without asserting the constitutional privilege was "in no position to complain" that he was compelled to give testimony against himself when his answers were used in his later criminal prosecution); *Day v. Bos. Edison Co.*, 150 F.R.D. 16, 21 (D. Mass. 1993) ("There is no question but that the privilege against self-incrimination can be waived, not only explicitly but also implicitly by failing to assert it. Thus if a witness who is compelled to testify, does, in fact, testify and during testimony reveals information instead of claiming the privilege, the witness can be said to have waived the privilege as to the information disclosed.") (citing *Garner v. United States,* 424 U.S. 648, 653 (1976)). Therefore, absent coercion, the giving of testimony ordinarily will result in a finding that the right to invoke the Fifth Amendment has been waived as to that testimony. Here Furando has not provided information that she now wishes to take back; she has invoked her

constitutional right against self-incrimination to justify her refusal to provide information in the first place.[2]

As the Seventh Circuit has noted, "'every reasonable presumption should be indulged against' waiver of a fundamental trial right," and that "heightened standard of waiver has been applied to . . . the right against self-incrimination." *Walton v. Briley,* 361 F.3d 431, 433 (7th Cir. 2004) (quoting *Hodges v. Easton,* 106 U.S. 408, 412 (1882)) (additional citations omitted); *see also Carnley v. Cochran*, 369 U.S. 506, 514 (1962) ("It has been pointed out that courts indulge every reasonable presumption against waiver of fundamental constitutional rights and that we do not presume acquiescence in the loss of fundamental rights.") (citation and internal quotation marks omitted)). The Court finds that Furando's failure to timely respond to Chepurko's discovery requests and her failure to invoke the Fifth Amendment in her initial responses do not satisfy this "heightened standard of waiver."

Finally, Chepurko argues for the first time in his reply brief that it is "unlikely" that Furando has adequately asserted her Fifth Amendment rights because it is "unclear how providing the information sought in interrogatory nos. 7 and 9 would open Ms. Furando up to criminal liability, when she is merely a party in interest in a forfeiture proceeding." [Dkt. 379 at 11-12.] Chepurko did not raise this issue in his opening brief, and in any event has not developed it sufficiently to merit the Court's attention. *See Schaefer v. Universal Scaffolding &*

---

[2] In his reply brief, Chepurko argues that Furando "partially answered these same interrogatory questions previously in her original late responses to [Chepurko's] interrogatories that were served on August 23, 2018 and did not raise the Fifth Amendment at that time. This contradicts any claim of good cause for only asserting the objection now." [Dkt. 379 at 8.] However, Furando's original answers to Interrogatories Nos. 7 and 9 were non-answers, which is precisely why Chepurko filed, and the Court granted, a motion to compel her to provide substantive answers to them.

*Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) ("It is not this court's responsibility to research and construct the parties' arguments.").

### III. Conclusion

For the reasons set forth above, Chepurko's Motion for Sanctions and Default Judgment Pursuant to Rule 37(b) as to Defendant Christine Furando's Failure to Obey a Discovery Order, [Dkt. 374], is **DENIED**.

SO ORDERED.

Dated: 3 MAR 2020

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record
via email generated by the Court's ECF system.


Service via U.S. Mail to:

JOSEPH FURANDO
65853-050
FORT DIX - FCI
FORT DIX FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 2000
Joint Base MDL, NJ 08640

CHAD DUCEY
11801-028
TERRE HAUTE - FCI
TERRE HAUTE FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808