# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEXANDER CHEPURKO, <br><br> Plaintiff-Relator, <br><br> v. <br><br> E-BIOFUELS, LLC, CARAVAN TRADING, LLC, CIMA GREEN, LLC, IMPERIAL PETROLEUM, INC., JOSEPH FURANDO, CHRISTINE FURANDO, CRAIG DUCEY, CHAD DUCEY, and JEFFREY T. WILSON, <br><br> Defendants. | Case No. 1:14-cv-00377-TWP-MJD |

## ENRTY ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT OR ALTERNATIVELY DEFAULT JUDGMENT

This matter is before the Court on Plaintiff-Relator Alexander Chepurko's ("Chepurko") Motions for Partial Summary Judgment or alternatively Motions for Default Judgment. Chepurko seeks partial summary judgment against Defendants Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson (Filing No. 290); e-Biofuels, LLC, Caravan Trading, LLC, Cima Green, LLC, Imperial Petroleum, Inc., (Filing No. 292); and Christine Furando, (Filing No. 294) (collectively, the "Defendants"). Also before the Court is a Motion for Appointment of Counsel filed by Joseph Furando. (Filing No. 391). Chepurko blew the whistle on the Defendants for false claims submitted to the United States Government ("Government") for transactions in the renewable energy industry. Because of Chepurko's whistleblowing efforts, the Government was able to criminally prosecute some of the Defendants named in this case for their roles in a multi-state scheme to defraud biodiesel buyers and U.S. taxpayers by fraudulently selling biodiesel incentives.

Chepurko separately filed this civil False Claims Act *qui tam* action against the Defendants

to recover damages and civil penalties on behalf of the Government and himself.  For the following reasons, Chepurko's Motions for Summary Judgment are **denied** as to Christine Furando but **granted** as to the remaining Defendants.  Joseph Furando's motion to recruit counsel is **denied**.

## I.  <u>BACKGROUND</u>

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to the non-moving parties. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The United States Congress passed the Energy Independence and Security Act of 2007 (the "Act"), which requires the Environmental Protection Agency ("EPA") to encourage the production and use of renewable fuel in the United States.  Under the Act, the Renewable Fuel Standard program was created to improve the nation's renewable energy industry and to reduce greenhouse gas emissions. The EPA was charged with developing, implementing, and enforcing the Renewable Fuel Standard program through various regulations.  This program requires producers or importers of renewable fuel to generate fuel credits, known as a "renewable identification number" ("RIN"), in proportion to the amount and type of renewable fuel they produce or import. The Renewable Fuel Standard program also requires that non-renewable fuel refiners and importers, known as obligated parties, and renewable fuel exporters obtain valid RINs and retire those RINs each year by submitting them to the EPA to meet their renewable volume obligations (Filing No. 291-4 at 2–3, 5–7; Filing No. 152 at 7–8; *see also* 40 C.F.R. Part 80).

Renewable fuel producers have valid RINs only if their claim to the EPA to create the RINs is accurate and meets the EPA's regulations.  Generating RINs for a volume of biodiesel that was not actually produced in compliance with EPA regulations is illegal. Generating RINs is

permissible only based on renewable fuel and if the production process used to make that fuel met specific regulatory criteria.  It is illegal under the regulations to generate RINs more than once for any given volume of biodiesel.  Renewable fuel producers are required to report data to the EPA about the production process and the feedstock used in production, and it is illegal to knowingly make materially false statements in electronic or paper submissions to the EPA. Because of the regulations, the EPA assumes when RINs are generated by producers that biodiesel was actually produced and introduced into streams of commerce pursuant to the requirements of the Renewable Fuel Standard program (Filing No. 291-4 at 5–7; Filing No. 152 at 8).

The EPA developed a system of assigning a unique identification number (a RIN) to each batch of renewable fuel. A RIN is a 38-digit number that includes the fuel batch number, the identification number of the manufacturer who created or imported the batch of fuel, and the volume of fuel produced.  The producer of a batch of renewable fuel creates the RIN for the batch. Once the RIN is created, it remains attached to that batch of renewable fuel until the fuel is blended with non-renewable fuel, at which point the RIN may be "separated" from the fuel and used for compliance with regulatory renewable volume obligations, held for future compliance, or traded. If the batch is divided before it is blended with non-renewable fuel, then the RIN is also divided (Filing No. 291-4 at 5–7; Filing No. 152 at 8–9).

Each newly-made gallon of biodiesel has 1.5 RINs attached to it.  Once a RIN is obtained or generated, the RIN can be used to satisfy EPA obligations or sold on the private market. The commercial market price for a single RIN averaged between $0.75 and $2.00. Furthermore, a newly-made gallon of biodiesel also has a $1.00 tax credit attached to it, which can be claimed by an entity that either mixes the biodiesel with regular diesel or uses it for fuel.  Thus, a newly-made gallon of biodiesel with the RINs and tax credit attached is worth approximately $2.50 more than

a gallon of biodiesel without the RINs and tax credit. Because of the value of RINs and the blender's tax credit, a gallon of biodiesel with assigned RINs and an available tax credit was worth much more than a gallon of RIN-stripped fuel (Filing No. 152 at 14).

To track the transfer of RINs, the EPA developed the EPA Moderated Transaction System. After a producer produces batches of renewable fuel and creates RINs, the producer must submit the new RINs to the transaction system within five days of the RINs' creation. The transaction system screens each submission and either accepts or rejects the new RINs. All producers and importers of renewable fuel must retain all detailed, supporting records. Producers and others engaged in fuel manufacture and RIN transactions must also submit quarterly reports to the EPA, detailing all fuel and RIN generation and transactions for that quarter (Filing No. 291-4 at 5–6; Filing No. 152 at 8–9).

The EPA has established regulations to control the generation and transfer of RINs. The regulations direct proper creation of RINs, validity of RINs, who may transfer or receive RINs, the production process of renewable fuel to support the creation of RINs, and the use of RINs to satisfy regulatory obligations. Violating the regulations, or causing others to violate the regulations, exposes the violator to civil, criminal, and administrative penalties. When individuals violate the law or regulations, the EPA issues a "notice of violation" to the individual. The EPA pursues enforcement actions against renewable fuel producers and importers that generate invalid RINs (Filing No. 291-4 at 5–7; Filing No. 152 at 7, 10–12; *see also* 40 C.F.R. Part 80).

Chepurko is a United States citizen and he personally worked for companies owned by Christine Furando and Joseph Furando between January and August 2011. (Filing No. 152 at 35.). On October 11, 2011, he voluntarily contacted the Government to disclose information about false claims that had been submitted to the Government. Between October 2011 and May 2012,

Chepurko voluntarily disclosed to the Government through written disclosures and in-person meetings extensive information that in turn was used by Chepurko for the allegations of this action. Chepurko and his counsel met with representatives of the U.S. Attorney's Office, the Internal Revenue Service ("IRS"), the EPA, the Department of Justice, the Federal Bureau of Investigation, and the Securities and Exchange Commission (Filing No. 333-2; Filing No. 333-3; Filing No. 333-4; Filing No. 333-5; Filing No. 333-6; Filing No. 333-7; Filing No. 333-8; Filing No. 333-9; Filing No. 333-10).

Chepurko's disclosures provided information that allowed the Government to conduct criminal and civil investigations of most of the Defendants named in this action. The EPA issued notices of violation against some of the Defendants as well as against some of the customers of the Defendants who were affected by the fraudulent scheme. At least one civil action, one administrative action, and two criminal actions were filed by the Government based on the information disclosed by Chepurko (Filing No. 152 at 3–4, 13).

Located in Middletown, Indiana, and founded in 2006, Defendant e-Biofuels, LLC ("e-Biofuels") is the entity in this action that falsely claimed to produce biodiesel for which fraudulent RINs were created. It had a production plant that could process animal fats and vegetable oils into renewable fuel. Defendant Craig Ducey was the president and chief executive officer of e-Biofuels, and his brother, Defendant Chad Ducey was the chief operating officer. They were co-owners of e-Biofuels. In May 2010, e-Biofuels was purchased by Defendant Imperial Petroleum, Inc. ("Imperial"), an Evansville, Indiana based company. Defendant Jeffrey Wilson was the chairman and president of Imperial. After Imperial purchased e-Biofuels, Craig and Chad Ducey continued to serve as paid officers or managers for e-Biofuels (Filing No. 291-4 at 3–4; Filing No. 152 at 5–7).

Defendant Caravan Trading, LLC ("Caravan") was a privately-owned New Jersey business, owned by Defendants Joseph Furando and his wife, Christine Furando. Caravan engaged in selling and trading fuel and other products. Caravan sold RIN-less biodiesel to e-Biofuels that e-Biofuels then falsely claimed it produced. Defendant Cima Green, LLC ("Cima Green") also was a privately-owned New Jersey business, owned by Joseph and Christine Furando. Cima Green also engaged in selling and trading fuel and other products. Joseph Furando was the chief executive officer of Caravan and Cima Green, and he operated the companies (Filing No. 291-4 at 4; Filing No. 152 at 5–6).

The fraudulent scheme, which Chepurko disclosed to the Government, consisted of e-Biofuels claiming to manufacture biodiesel from chicken fat and other organic "feedstock"—the raw materials from which biodiesel fuel is produced. However, in actuality, e-Biofuels was not manufacturing biodiesel fuel in any significant quantity. Rather, it simply purchased RIN-less biodiesel from Caravan, Cima Green, and Joseph Furando, transported the fuel to its Indiana facility, and then resold the fuel as though it had been produced at its facility. Sometimes the fuel e-Biofuels purchased and resold was transported directly from the producer to the customer (Filing No. 291-4 at 8–14; Filing No. 152 at 13).

Between May 2010 and the summer of 2012, after separating and retiring RINs, Astra Oil Company ("Astra") sold RIN-less fuel to Caravan. Caravan then resold the RIN-less fuel it had purchased from Astra to Imperial and e-Biofuels. Caravan created internal records to give the impression that it was selling Imperial and e-Biofuels "feedstock" as opposed to finished biodiesel. Once Imperial and e-Biofuels took possession of the RIN-less biodiesel fuel, they generated new RINs for that volume of fuel as though the biodiesel fuel had been produced at the e-Biofuels facility. This creation of new RINs for the same fuel was illegal. Imperial and e-Biofuels then

either sold the fuel with the falsely generated RINs attached or separated the falsely generated RINs to sell independently. They also falsely labeled much of the biodiesel fuel before selling it to customers (Filing No. 291-4 at 8–14; Filing No. 152 at 15–16).  While working for e-Biofuels, Chad Ducey caused third-party engineers to create false reports that were then used to submit to the EPA, and Chris Ducey created false bills of lading and other false paperwork to provide to customers and government regulators (Filing No. 291-4 at 10–12, 17–18).

In all, over a period of more than two years, Caravan, Cima Green, and Joseph Furando sold more than 35 million gallons of RIN-stripped fuel to e-Biofuels and Imperial.  During the same time period, e-Biofuels and Imperial sold more than 35 million gallons of fuel to customers. They generated more than 50 million RINs that were based on biodiesel fuel that was never produced at the e-Biofuels facility (Filing No. 291-4 at 13–14).

Imperial and e-Biofuels submitted false reports and statements to the EPA, falsely registering the new RINs to conceal their scheme, to avoid paying penalties, and to obtain tax credits. The Defendants generated and conspired to generate invalid RINs for biodiesel for which RINs previously had been generated. Millions of RINs generated by e-Biofuels were invalid because they were generated without producing any qualifying renewable fuel. The majority of these invalid RINs were transferred to others (Filing No. 152 at 13–14, 16–18).

Chepurko initiated this False Claims Act *qui tam* action in June 2012 under case number 1:12-cv-786-TWP-MJD. On August 5, 2014, Chepurko's *qui tam* action under case number 1:12-cv-786-TWP-MJD was consolidated under this case number (1:14-cv-377-TWP-MJD) (Filing No. 52).  In September 2013, e-Biofuels, Caravan, Cima Green, Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson were charged by the Government in two related criminal cases. They were variously charged with one or more of the following: conspiracy to defraud the Government,

submitting false claims to the Government, making false statements under the Clean Air Act, making false statements to the Securities and Exchange Commission, and other criminal violations. The criminal charges were based on the same facts of this civil action. *See United States v. Craig Ducey, Chad Ducey, Chris Ducey, Joseph Furando, Evelyn Katirina Pattison (aka Katirina Tracy), e-Biofuels, LLC., Caravan Trading Company, and Cima Green LLC*., No. 1:13-cr-189-SEB-TAB (S.D. Ind.), Docket No. 1.; *United States v. Jeffrey J. Wilson and Craig Ducey*, No. 1:13-cr-190-SEB-TAB (S.D. Ind.), Docket No. 1. On January 21, 2015, this civil case was stayed until the conclusion of the related criminal matters, at which point the stay was lifted on February 2, 2017 (Filing No. 82; Filing No. 87).

On April 15, 2015, Christine and Joseph Furando appeared before the district court in the related criminal case as the representatives of Caravan and Cima Green. Through company representatives Christine and Joseph Furando, Caravan and Cima Green pled guilty to charges of wire fraud and conspiracy pursuant to a written plea agreement that Christine and Joseph Furando had signed. The charges were based on the same facts underlying this civil action (Filing No. 291-23; Filing No. 291-10; Filing No. 291-5).

Joseph Furando pled guilty to charges of wire fraud, false statements to federal investigators, engaging in prohibited financial transactions with criminal proceeds, and conspiracy (Filing No. 291-9). Craig Ducey pled guilty to charges of wire fraud, false statements under the Clean Air Act, false claims against the IRS, obstruction of justice, engaging in prohibited financial transactions with criminal proceeds, and conspiracy (Filing No. 291-11). Chad Ducey pled guilty to charges of wire fraud, false statements to the EPA and IRS, false claims against the IRS, engaging in prohibited financial transactions with criminal proceeds, and conspiracy (Filing No. 291-12). e-Biofuels pled guilty to charges of wire fraud, false statements to the EPA, false claims

against the IRS, false statements under the Clean Air Act, obstruction of justice, and conspiracy (Filing No. 291-13). Jeffrey Wilson's criminal charges were tried by a jury, and the jury found him guilty of nineteen counts of criminal violations, including securities fraud and making false statements to the Securities and Exchange Commission (Filing No. 291-20).

Final judgments were entered in the criminal proceedings against Caravan, Cima Green, e-Biofuels, Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson. Jeffrey Wilson was ordered to pay restitution in the amount of $16,468,769.73 (Filing No. 291-20 at 6–7). Caravan, Cima Green, e-Biofuels, Joseph Furando, Craig Ducey, and Chad Ducey were held jointly and severally liable with each other for a restitution amount of $56,135,811.00 (Filing No. 291-14 at 8; Filing No. 291-15 at 6; Filing No. 291-16 at 6; Filing No. 291-17 at 10; Filing No. 291-18 at 8; Filing No. 291-19 at 5).

In this False Claims Act *qui tam* action, a Clerk's Entry of Default was entered against Imperial, Caravan, Cima Green, and e-Biofuels after these defendants failed to respond to the pleadings against them or otherwise defend against this action (Filing No. 166; Filing No. 227; Filing No. 228; Dkt. No. 180 in the consolidated case from case number 1:12-cv-786-TWP-MJD).

After years of litigation and a two-year stay of the case, Chepurko filed the motions before the Court, seeking judgments as a matter of law against Defendants Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson (Filing No. 290); e-Biofuels, LLC, Caravan Trading, LLC, Cima Green, LLC, and Imperial Petroleum, Inc. (Filing No. 292); and Christine Furando (Filing No. 294).

## II.   SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.    DISCUSSION

Chepurko asserts four claims in his Second Amended Complaint, Count I: Violation of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1); Count II: Violation of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(C); Count III: Alternate Remedies; and, Count IV: Supplemental Complaint Violation of the False Claims Act by Christine Furando.  (Filing No. 152).  He asks the Court to enter summary judgment against Joseph Furando, Craig Ducey, Chad Ducey, Jeffrey Wilson, and Christine Furando. He asks the Court to enter default judgment against e-Biofuels, Caravan Trading, Cima Green, and Imperial or alternatively to enter summary judgment against these business entity defendants.  The Court will first briefly discuss the law concerning the False Claims Act claims and then turn to Chepurko's request for default judgment followed by the request for summary judgment.

**A.      False Claims Act Claims**

The False Claims Act ("FCA") provides:

[A]ny person who-

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);
(D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;
. . . or
(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

violates the FCA. 31 U.S.C. § 3729(a)(1).

A "claim" under the FCA "means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or

property, that is presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2)(A)(i). An "obligation" under the FCA "means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

Under the FCA,

the terms "knowing" and "knowingly"—
    (A) mean that a person, with respect to information—
        (i) has actual knowledge of the information;
        (ii) acts in deliberate ignorance of the truth or falsity of the information; or
        (iii) acts in reckless disregard of the truth or falsity of the information; and
    (B) require no proof of specific intent to defraud;

31 U.S.C. § 3729(b)(1).

To prove a violation under Section 3729(a)(1)(A), it must be shown that: 1) the defendant made a claim to receive money or property from the government; 2) the claim was false; and 3) the defendant knew the claim was false. *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 778 (7th Cir. 2016).

To prove a violation under Section 3729(a)(1)(B), it must be shown that: 1) the defendant made a statement or record in order to receive money or property from the government; 2) the statement or record was false; 3) the defendant knew the statement or record was false; and 4) the false statement or record was material to the government's decision to pay or approve the false claim. *United States ex rel. Marshall v. Woodward Inc.*, 812 F.3d 556, 561 (7th Cir. 2015).

To prove a violation under Section 3729(a)(1)(D), a plaintiff must show defendant's 1) possession, custody, or control of property used or to be used by the government; 2) delivery, or causing delivery, of less than all that property; and 3) knowledge of that inadequate delivery.

*United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 438–39

(6th Cir. 2016).

> To prove a violation under Section 3729(a)(1)(G), a plaintiff must show the defendant:

> knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a)(1)(G); *see also United States ex rel. Yannacopoulos v. Gen. Dynamic*, 652

F.3d 818, 835 (7th Cir. 2011). A violation under this subsection "is a false statement used not to

obtain payments from the government, but to conceal, avoid, or decrease an obligation to pay or

transmit money or property to the Government." *Yannacopoulos*, 652 F.3d at 835 (internal citation

and quotation marks omitted).  Liability under this subsection covers not only obligations of the

defendants themselves but also covers "knowingly making a false statement that will cause a third

party to impair its obligation to the federal government." *United States v. Caremark, Inc.*, 634 F.3d

808, 817 (5th Cir. 2011).

An FCA conspiracy claim arises when a person "conspires to commit a violation of

subparagraph (A), (B), (D), (E), (F), of (G)." 31 U.S.C. § 3729(a)(1)(C). General civil conspiracy

principles apply to FCA conspiracy claims, and thus, to establish an FCA conspiracy claim, it must

be shown that a defendant conspired with one or more persons to violate at least one other

provision of Section 3729(a)(1), and one or more of the conspirators performed an overt act that

effected an FCA violation. *See United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n.3

(7th Cir. 1999); *United States ex rel. Rockey v. Ear Inst. of Chi., LLC*, 92 F. Supp. 3d 804, 825–26

(N.D. Ill. 2015).

Chepurko's substantive FCA claim under Count I is based upon violations of Section 3729(a)(1)(A), (B), (D), and (G). Count II is an FCA conspiracy claim brought pursuant to 31 U.S.C. § 3729(a)(1)(C). Chepurko asserts,

> All the violations of the FCA alleged by Plaintiff-Relator are interconnected and form one scheme that caused the creation, sale and submission of invalid RINs to the EPA. These violations all led to the damages suffered by the United States. . . . Thus, if the Court finds that judgment in favor of Mr. Chepurko is appropriate for any of the alleged FCA violations, it should result in the same award of damages and penalties.

(Filing No. 293 at 13.)

**B.    Motion for Default Judgment against Business Entity Defendants**

A Clerk's Entry of Default has been entered against Imperial, Caravan, Cima Green, and e-Biofuels, and Chepurko now asks the Court for entry of default judgment against them.  Imperial, Caravan, Cima Green, and e-Biofuels have not moved to set aside the Clerk's Entries of Default, and none of these business entity defendants are minors, incompetent persons, or active-service military members (Filing No. 291-2 at 4).

The Court may enter a default judgment against a party who has failed to plead or otherwise defend itself.  Fed. R. Civ. P. 55(b)(2).  The decision to grant or deny a default judgment is within the Court's discretion.  *See Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (indicating a decision on default judgment is reviewed for abuse of discretion). A default judgment establishes the defendant's liability to the plaintiff on the cause of action alleged in the complaint. *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). "'Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.'"  *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). Damages, however, "must be proved unless they are liquidated or capable of calculation." *Wehrs*, 688 F.3d at 892. Since e-Biofuels, Caravan,

Cima Green, and Imperial failed to respond to or otherwise defend against the allegations asserted against them, all of the well-pleaded factual allegations regarding liability are taken as true.

The allegations supporting Counts I and II—on which Chepurko has requested default judgment—asserted in the Complaint, Amended Complaint, and Second Amended Complaint are more than sufficient to establish the elements (as explained in the previous section) of the substantive FCA claim and the FCA conspiracy claim. As described in greater detail in the "Background" section above, e-Biofuels, Imperial, Caravan, Cima Green, Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson devised and carried out a scheme to create false RINs based on biodiesel fuel that had not actually been manufactured. Those RINs were submitted to the EPA as false claims for energy credits and to meet obligations to the Government. These Defendants' actions also caused e-Biofuels' customers to submit false claims to the EPA based on the fraudulent RINs. These Defendants agreed to undertake actions that violate the provisions of Section 3729(a)(1), and they acted on that agreement by creating, transferring, and selling fraudulent RINs that resulted in damages to the Government. Because the allegations establish the substantive FCA claim and the FCA conspiracy claim, the Court **grants** Chepurko's Motion and enters default judgment against Defendants e-Biofuels, Caravan, Cima Green, and Imperial on those two claims.

A hearing on damages against a defaulted defendant is not necessary if the damages are "liquidated or capable of calculation." *Wehrs*, 688 F.3d at 892; *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990); *United States v. Rinaldi*, 2007 WL 1498856 (C.D. Ill. May 21, 2007). The damages in this case are capable of calculation and easily ascertainable, and therefore, no evidentiary hearing is necessary.

Those who violate the FCA are liable "for a civil penalty of not less than [$5,500] and not more than [$11,000], as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . , plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1); *United States v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013); *see also* U.S. Department of Justice, The False Claims Act: A Primer, at 1.[1]

Numerous other courts have concluded that a finding of actual loss when determining a restitution award in a criminal judgment can be used as the basis for determining the damages suffered by the Government in a subsequent FCA case. *See, e.g.*, *United States v. Harris*, 2008 U.S. Dist. LEXIS 7346, at *4 (N.D. Ill. Jan. 31, 2008) (awarding treble damages based on criminal restitution award, plus the additional statutory civil penalty); *United States ex rel. Johnson v. D.E.L.L. Child Dev. Corp.*, 2006 WL 2385280, at *3 (S.D. Ill. Aug. 17, 2006) (awarding $75,000.00 in FCA case after defendant admitted in prior criminal case to defrauding Government of $25,000.00); *United States v. Bickel*, 2006 WL 1120439, at *3–4 (C.D. Ill. Feb. 22, 2006) (trebling actual damages determined in prior criminal proceeding); *United States ex rel. Lamberts v. Stokes*, 640 F. Supp. 2d 927, 930, 933 (W.D. Mich. 2009) (trebling FCA damages based upon restitution award determined in prior criminal proceeding); *United States v. Szilvagyi*, 398 F. Supp. 2d 842, 849–50 (E.D. Mich. 2005) (awarding treble the amount of actual loss that Government suffered as determined for restitution award in prior criminal case).

In the criminal cases against them, Caravan, Cima Green, e-Biofuels, Joseph Furando, Craig Ducey, and Chad Ducey were held jointly and severally liable for restitution in the amount of $56,135,811.00 (Filing No. 291-14 at 8; Filing No. 291-15 at 6; Filing No. 291-16 at 6; Filing No. 291-17 at 10; Filing No. 291-18 at 8; Filing No. 291-19 at 5). Of that restitution amount,

---

[1] Available at https://www.justice.gov/sites/default/files/civil/legacy/2011/04/22/C-FRAUDS_FCA_Primer.pdf, last visited April 28, 2020.

$33,082,478.00 was awarded as damages to the IRS to compensate it for fraudulent tax credits, which are not at issue in this FCA *qui tam* case. The other $23,053,333.00 equals the total amount of damage incurred by the Government that resulted from the fraudulent generation of RINs and the false claims submitted to the EPA Renewable Fuel Standard program (*see, e.g.*, Filing No. 291-15 at 6–8). As this case is based upon the fraudulent generation of RINs and the false claims submitted to the EPA Renewable Fuel Standard program, an FCA award of treble damages based upon the related criminal proceedings' restitution award amounts to $69,159,999.00.

Additionally, Chepurko asks the Court to award the minimum statutory civil penalty ($5,500.00) for each of the false claims presented. He explains,

> It can be found with certainty that at least 82 false claims were submitted or caused to be submitted by Defendants. First, the criminal indictment lists 11 specific instances when Craig Ducey and e-Biofuels submitted false claims to generate RINs. Ex. 3, ¶¶ 64-65. Also, using the administrative settlement agreements the EPA and e-Biofuels customers entered, it can be determined that those customers submitted invalid e-Biofuels generated RINs to the EPA to meet a total of 71 RVOs between them. *See* Ex. 2; Ex. 24. As obligated parties are required to present a claim showing their retired RINs at least once a year to meet their annual RVOs, then at a minimum, 71 false claims were caused to be presented to the government due to the actions of the Defendants. Ex. 2; Ex. 24.

(Filing No. 291 at 34 (citing designated evidence at Filing No. 291-4 at 32–33; Filing No. 291-3; Filing No. 291-25)).) This argument is well-taken, supported by the designated evidence, unopposed, and uncontradicted by other evidence. Therefore, the Court determines that the FCA civil penalty award should be $451,000.00 (82 false claims multiplied by the minimum statutory penalty of $5,500.00). The FCA civil penalty award and the treble damages award result in a total award of $69,610,999.00. The defaulted Defendants—e-Biofuels, Caravan, Cima Green, and Imperial—are jointly and severally liable under the FCA for the total award of **$69,610,999.00**.

## C.   Motion for Summary Judgment against Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson

Chepurko asks the Court to enter summary judgment against Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson on Counts I and II of the Second Amended Complaint. He asserts,

> Under the doctrine of collateral estoppel, criminal convictions in the related criminal actions precludes these Defendants from disputing any of these facts that were litigated in the criminal case and that also satisfy the elements of the Plaintiff-Relator's claims and support the motion for summary judgment in this case. The criminal convictions are based on a factual record in the related criminal cases that actually and necessarily determined those facts and were essential to those convictions and those same facts also satisfy the elements of the issues to be litigated in this case. This motion for summary judgment is based on the factual record that has already been determined in the related criminal cases against these defendants.

(Filing No. 290 at 1.)

Under collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Carter v. Comm'r*, 746 F.3d 318, 321 (7th Cir. 2014) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "The party against whom the issue had been resolved must have had, first, a full and fair opportunity to litigate the issue in the previous suit . . . and, second, a meaningful opportunity to appeal the resolution of the issue." *Id.* (internal citations and quotation marks omitted).

Chepurko further asserts that the FCA includes a statutory collateral estoppel provision to be applied when a preceding criminal case ends in a guilty plea or conviction after trial.

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

31 U.S.C. § 3731(e); *see also United States v. Harris*, 2008 U.S. Dist. LEXIS 7346 (N.D. Ill. Jan. 31, 2008) (applying FCA statutory collateral estoppel when entering judgment against defendant).

Joseph Furando, Craig Ducey, and Chad Ducey each pled guilty pursuant to plea agreements and stipulated to a factual basis to support the criminal judgments against them in their related criminal proceedings (Filing No. 291-5; Filing No. 291-6; Filing No. 291-7; Filing No. 291-9; Filing No. 291-11; Filing No. 291-12). Final judgments in those criminal matters were entered against Joseph Furando, Craig Ducey, and Chad Ducey (Filing No. 291-14; Filing No. 291-17; Filing No. 291-18). Jeffrey Wilson was convicted by a jury after proceeding to trial on the charges against him. Final judgment was entered against him, and his appeal from the conviction was denied (Filing No. 291-20; *see also United States v. Wilson*, 879 F.3d 795 (7th Cir. 2018)).

After reviewing the designated evidence concerning the related criminal matters against Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson, the Court determines that collateral estoppel applies in this FCA *qui tam* action. The issues and facts that were involved in the earlier criminal matters are the same issues and facts involved in this civil action. The same fraudulent biodiesel fuel scheme and false statements to the Government are central to all the cases. The facts and issues were actually and fully litigated in the previous criminal matters through plea agreements and stipulated factual bases or through a jury trial, guilty verdict, and appeal. The determination of the truth of the issues and facts concerning conspiracy and false statements to the Government was essential to the final judgments in the criminal proceedings. Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson each appeared in their criminal cases and were fully represented by counsel (Filing No. 291-21; Filing No. 291-22).

Furthermore, the statutory collateral estoppel provision of the FCA also applies as the Government secured a final judgment in its favor against Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson for charges of false statements based on the same transactions at issue here, namely the fraudulent biodiesel fuel scheme and false statements to the Government.

As discussed in the previous section concerning default judgment against the business entity Defendants, the allegations supporting Counts I and II of the Second Amended Complaint are more than sufficient to establish the elements of the substantive FCA claim and the FCA conspiracy claim.  The undisputed designated evidence from the prior related criminal proceedings establishes those same facts and issues that are asserted in Counts I and II.  Therefore, the Court concludes that **summary judgment is appropriate against Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson** on the substantive FCA claim and the FCA conspiracy claim.

For the reasons discussed in the previous section, the Court concludes that the appropriate damages award for the substantive FCA claim and the FCA conspiracy claim is $69,610,999.00. Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson are each held jointly and severally liable with e-Biofuels, Caravan, Cima Green, and Imperial for the total award of **$69,610,999.00**.

The Court briefly notes that Craig Ducey, Chad Ducey, and Jeffrey Wilson did not respond to Chepurko's Motion for Summary Judgment.  Joseph Furando filed a Response Brief, (Filing No. 320), opposing summary judgment.   He emphasized his *pro se* status and raised the longstanding principle that "[a] document filed *pro se* is to be liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, the Court notes,

> [I]t is also well established that pro se litigants are not excused from compliance with procedural rules. [T]he Supreme Court has never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel[.] Further, as the Supreme Court has noted, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Loubser v. United States*, 606 F. Supp. 2d 897, 909 (N.D. Ind. 2009) (citations and quotation marks omitted).

In his Response Brief, Joseph Furando argues that the public disclosure bar to FCA claims applies in this case to prohibit Chepurko from pursuing the claims.  He argues that numerous government agencies raided his offices in late May 2012, and those raids were conducted to investigate the fraud alleged in this case.  He asserts the raids were executed pursuant to previously obtained search warrants, which demonstrates that government agents knew about the information of fraud before the May 2012 raids.  "Following the raid, articles about Defendant, his business, and the alleged fraud were featured in numerous newspapers and trade publications across the country." (Filing No. 320 at 5.) Joseph Furando then points out that Chepurko filed this *qui tam* action on "June 7, 2012, some 10 days after this government action and public disclosure," and thus, "[t]he facts about Plaintiff-Relator's timing demonstrate knowledge about the underlying fraud had already entered the public domain a week and a half before he filed suit." *Id.*  As such, Joseph Furando argues, the public disclosure bar prohibits Chepurko from bringing the FCA claims.  He further argues that Chepurko is not an original source of the information concerning the fraud, asserting that Chepurko simply relies entirely on the information found in the criminal proceedings to support this *qui tam* action.

Joseph Furando failed to designate any evidence that provides factual support about a "search warrant," when such a warrant was issued, and the contents of such a warrant. He also failed to designate any evidence that provides factual support about unspecified newspapers and trade publications, when those alleged publications were published, and the contents of such alleged publications. Joseph Furando's unsupported, bare assertions are not enough to give rise to the public disclosure bar. Importantly, the undisputed designated evidence shows that Chepurko voluntarily contacted the Government on October 11, 2011, to disclose information about the false claims. This was well before he filed this *qui tam* action and well before the May 2012 raid upon

which Joseph Furando relies. Then between October 2011 and May 2012, Chepurko voluntarily disclosed to the Government through written disclosures and in-person meetings extensive information that in turn was used by Chepurko for the allegations of this action (Filing No. 333-2; Filing No. 333-3; Filing No. 333-4; Filing No. 333-5; Filing No. 333-6; Filing No. 333-7; Filing No. 333-8; Filing No. 333-9; Filing No. 333-10). Joseph Furando's argument is unavailing to defeat summary judgment.[2]

**D.    <u>Motion for Summary Judgment against Christine Furando</u>**

Chepurko seeks summary judgment against Christine Furando on Counts I, II, and IV of the Second Amended Complaint (Filing No. 294). On January 10, 2019, the Court granted Christine Furnado's motion to dismiss Count IV. (Filing No. 323). Therefore, the Court need not consider summary judgment concerning Count IV.  With respect to Count II, the Court notes that Chepurko did not develop any argument supporting his request for summary judgment and Count II is not even mentioned or argued in Chepurko's supporting briefs. This is readily highlighted by a comparison of the nearly-identical briefs filed against Christine Furando, the business entity defendants, and the four other individual defendants (*compare* Filing No. 295 *with* Filing No. 293 at 28–29 and Filing No. 291 at 30–31). Because Chepurko failed to present any argument as to Count II, the Court will not consider that claim on summary judgment.  *See United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006) ("perfunctory and undeveloped arguments, and arguments that

---

[2] Before the Court also is Joseph Furando's sixth request that the Court appoint him counsel so that he can properly prepare for trial. (Filing No. 391). That request is **denied** because Mr. Furando has been able to competently represent himself throughout this litigation. The Court has analyzed Mr. Furando's abilities as related to "the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings." *Pruitt v. Mote, 503 F.3d 647, 654-655 (7th Cir. 2007)*. As evidenced by his legal arguments in his response in opposition, the Court again finds that he indeed is able to competently litigate this matter himself. *See McCaa. v Hamilton*, 893 F.3d 1027, 1032 (7th Cir. 2018).  (The question is not whether an attorney would help the plaintiff's case, but whether, given the difficulty of the case, his personal abilities are such that he is competent to litigate it himself.) Moreover, the instant request for counsel is now moot. The Court's summary judgment ruling eliminates the need for trial counsel.

are unsupported by pertinent authority, are waived"). To succeed on his claim against Christine Furando under Count II, Chepurko will have to attempt to do so at trial.

Regarding Count I of the Second Amended Complaint, Chepurko argues that he is entitled to summary judgment against Christine Furando because collateral estoppel based on the criminal convictions applies to her liability in this civil *qui tam* action. Similar to his argument against Joseph Furando, Craig Ducey, Chad Ducey, and Jeffrey Wilson, Chepurko asserts that the criminal convictions establish Christine Furando's FCA liability here.

While Christine Furando was not a defendant in any of the related criminal matters, Chepurko argues that collateral estoppel nonetheless applies because she was the majority owner of Caravan and Cima Green, she personally appeared in the criminal case as a representative of those companies at the change of plea hearing, and she signed the plea agreement and factual basis in the criminal case. Chepurko points out that Christine Furando was the CEO and president of Cima Green. He argues that she was in privity with Caravan and Cima Green as to the facts giving rise to this *qui tam* action and the criminal judgments, and thus, she should be collaterally estopped by the criminal judgments against Caravan and Cima Green.

Chepurko argues,

> [C]ollateral estoppel can bind not only the actual parties represented in the prior action but also those "who were in privity with parties to the prior proceeding." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir. 1995) (citing *Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979); *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 356 (7th Cir. 2010). Privity is used as "a descriptive term for designating those with a sufficiently close identity of interests" and "the privity label simply expresses a conclusion that preclusion is proper." *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 971 (7th Cir. 1998) (quoting *In Matter of L & S Industries*, 989 F.2d 929, 932-33 (7th Cir. 1993).

(Filing No. 295 at 12–13.)

23

Christine Furando responds that summary judgment is not warranted and Chepurko's own allegations and evidence undermine his argument for privity and collateral estoppel. She contends that Chepurko admitted in his pleadings and evidence that she had no operational control over Cima Green and Caravan, and she was only the majority owner of the companies so that Joseph Furando could claim the companies were owned by an individual who is a minority. She further points out that she was never criminally indicted, and she was never found to be a co-conspirator in the biodiesel fuel scheme and never appeared in the related criminal matters in her personal capacity. (Filing No. 317). Instead, she only appeared on behalf of Cima Green and Caravan in her representative capacity for the companies. Those companies pled guilty; she did not. She signed a plea agreement and factual basis on behalf of the companies on the day that she appeared for the change of plea hearing. In the criminal matter, there were no issues as to whether Christine Furando was guilty of making false statements or claims. Her liability was not litigated in the criminal matter, and her liability was not essential to the final criminal judgments. Because the prior case was a criminal proceeding, Christine Furando argues that she could do nothing to protect her personal interests and liability in that matter.

The success of Chepurko's Motion for Summary Judgment hinges on his argument that privity and collateral estoppel apply to Christine Furando to establish her FCA liability. Therefore, the Court focuses on this argument. "As a matter of due process, collateral estoppel can be used to bind only those persons who were parties or who are in privity with parties to the prior proceeding." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir. 1995). "[O]ffensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979).

The Seventh Circuit explained, "The Supreme Court has also held that the doctrine cannot be used offensively--i.e., when a plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously litigated and lost in another action--where the application of the doctrine would be unfair to a defendant." *Kraushaar*, 45 F.3d at 1050 (internal citation and quotation marks omitted). "Still another situation where it might be unfair to apply offensive estoppel is where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." *Parklane Hosiery*, 439 U.S. at 330–31.

Based on these principles and the facts surrounding Christine Furando's involvement in the criminal matter, the Court concludes that applying privity and collateral estoppel to establish her personal liability in this case would be patently unfair and offend principles of due process. Christine Furando appeared in court on a single day for a change of plea hearing in a representative capacity for Caravan and Cima Green. She did not appear in her personal capacity.  On that same day, she signed a plea agreement and factual basis on behalf of Caravan and Cima Green.

That factual basis stated,

Defendant Caravan Trading Company LLC and Defendant CIMA Green LLC were companies that Defendant JOSEPH FURANDO ("FURANDO") owned and essentially operated. Although FURANDO's wife owned fifty-one percent of both companies, [JOSEPH] FURANDO controlled them. [JOSEPH] FURANDO held the title of Vice President of Sales and Marketing at Caravan and CIMA. This title did not reflect his authority at the companies, which was essentially absolute. His coconspirator, Katirina Tracy, worked for FURANDO and was a corporate officer for both companies. FURANDO carried out many of the actions set forth in this Statement of Facts in concert with Tracy.

(Filing No. 291-5 at 6.)

The criminal indictment indicated that "Furando and his wife owned these business entities [Caravan and Cima]," (Filing No. 291-4 at 4), but the indictment did not further implicate Christine Furando or her interests.

25

When considering privity in another case, the Seventh Circuit noted that "[t]he parties in the earlier case did not provide the later plaintiffs with any notice that a suit was pending that would conclusively resolve their legal rights." *Tice*, 162 F.3d at 972. Chepurko argues that Christine Furando should be held liable in this case because she was in privity with her companies that were defendants in the criminal matter. He also argues in his briefing that he could not present his interests in the criminal matter as he was not a party in the criminal case and was not permitted to intervene. However, this same argument applies to Christine Furando. She was not a party in the criminal matter and could not present or defend her own personal interests in that matter beyond the forfeiture proceeding subsequent to the criminal judgment. While Christine Furando was aware of the criminal matter, there is nothing that indicates the criminal case would have conclusively resolved her personal legal rights. In fact, the criminal matter was not conclusively resolving Christine Furando's personal legal rights. It was conclusively resolving Caravan's and Cima Green's legal rights. Additionally, this "second action affords [Christine Furando] procedural opportunities unavailable in the first action that could readily cause a different result," namely, an opportunity to defend against her personal liability. *See Parklane Hosiery*, 439 U.S. at 330–31.

The Seventh Circuit also explained in *Tice* that courts might consider whether "manipulative litigation practices" were employed by parties when considering the application of privity. 162 F.3d at 973. The Government pursued the earlier criminal matter against Caravan and Cima Green, not against Christine Furando, and this suggests an absence of manipulative litigation practices by Christine Furando as she did not bring the earlier litigation personally or on behalf of Caravan and Cima Green.

In the Second Amended Complaint, Chepurko alleges, "[a]fter Mr. Chepurko began working for Joseph Furando it was apparent that Christine Furando did not have day-to-day operational control of [Caravan and Cima Green]." (Filing No. 152 at 35.) Furthermore, in his designated evidence, Chepurko includes his interviews with Government agents, and in those interviews he testified, "Christine Furando was a 51 percent owner of Caravan Trading LLC but had no operational role in the company. [Joseph] Furando made his wife the majority owner so that it would be classified as a minority owned business." (Filing No. 333-6 at 3.) And "Christine Furando was never at the office to work." (Filing No. 333-9 at 4.) These allegations and evidence further support the Court's conclusion that applying privity and collateral estoppel to Christine Furando would be inappropriate.

Because Chepurko's request for summary judgment against Christine Furando is based entirely on privity and collateral estoppel, and the Court has concluded that it would be patently unfair and would offend due process to apply those principles, the Court determines that the Motion for Summary Judgment against Christine Furando must be **denied**. Christine Furando asked in her Response Brief for entry of summary judgment in her favor, but the Court concludes she has not established that there are no factual disputes and she is not entitled to judgment as a matter of law.  Therefore, her request is **denied** and this claim may proceed to trial.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Chepurko's Motion for Summary Judgment against Defendants Chad Ducey, Craig Ducey, Joseph Furando, and Jeffrey Wilson (Filing No. 290), and the Motion for Default Judgment, or Alternatively, Motion for Summary Judgment Against e-Biofuels, LLC, Imperial Petroleum, Inc., Caravan Trading, LLC, and Cima Green, LLC (Filing No. 292.)  Joseph Furando, Craig Ducey, Chad Ducey, Jeffrey Wilson, e-

27

Biofuels, Caravan, Cima Green, and Imperial are each held jointly and severally liable on the substantive FCA claim and the FCA conspiracy claim in the amount of **$69,610,999.00**. Chepurko's Motion for Summary Judgment against Christine Furando (Filing No. 294) is **DENIED**. Joseph Furando's Motion for Appointment of Counsel (Filing No. 391) is **DENIED** for the reasons stated in prior Orders (Filing No. 301, Filing No. 284, Filing No. 277, Filing No. 253), and because the Motion is now moot.

The Clerk is **directed to terminate** Defendants Chad Ducey, Craig Ducey, Joseph Furando, and Jeffrey Wilson; as well as the defaulted business entities, Defendants e-Biofuels, LLC, Imperial Petroleum, Inc., Caravan Trading, LLC, and Cima Green, LLC., as parties in this case. The claims in Count I and II against Christine Furando may proceed to trial.

**SO ORDERED.**

Date: 4/30/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Chad Ducey, #11801-028
Terre Haute Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, Indiana  47808

Joseph Furando, #65853-050
Fort Dix Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 2000
Joint Base MDL, New Jersey 08640

Brian J. McCabe
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION
brian.mccabe@usdoj.gov

John Andrew Goodridge
JOHN ANDREW GOODRIDGE LAW
jagodridge@jaglo.com

Joyce R. Branda
UNITED STATES ATTORNEY'S OFFICE
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C.  20044

CARAVAN TRADING, LLC
.52 Park Avenue
Park Ridge, New Jersey  07656

Tracy Lyle Hilmer
UNITED STATES DEPT. OF JUSTICE
CIVIL DIVISION
P.O. Box 261
Ben Franklin Station
Washington, D.C.  20044

CIMA GREEN, LLC
.52 Park Avenue
Park Ridge, New Jersey  07656

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov

David K. Colapinto
KOHN & COLAPINTO
dc@kkc.com

Stephen M. Komie
KOMIE AND ASSOCIATES
Stephen_m_komie@komie-and-associates.com

Stephen Martin Kohn
KOHN & COLAPINTO
smk@kkc.com

Theodore J. Minch
SOVICH MINCH LLP
tjminch@sovichminch.com